UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA (Ft. Lauderdale)

CASE NO.: 0:20-cv-61469-RS

Akai Custom Guns, LLC, et al.,

Plaintiffs,

vs.

KKM Precision, Inc., et al.,

Defendants.
_________________________________/

**DEFENDANT KKM PRECISION, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT**

COMES NOW, Defendant, KKM Precision, Inc. ("KKM"), by and through the undersigned counsel, and files this Answer and Affirmative Defenses to the Plaintiffs' Amended Complaint and states:

## Parties, Jurisdiction, and Venue

1. Admitted for purposes of jurisdiction, but denied that Plaintiffs are entitled to recover any sum from KKM.
2. Without knowledge, therefore denied.
3. Without knowledge, therefore denied.
4. Admitted.
5. Without knowledge, therefore denied.
6. Without knowledge, therefore denied.
7. Without knowledge, therefore denied.
8. Without knowledge, therefore denied.

9. Admitted for purposes of jurisdiction. Denied that KKM committed a tortious act in the State of Florida. Denied that KKM caused any injury to Plaintiffs, therefore denied that KKM injured Plaintiffs within the State of Florida. Denied that KKM breached a contract with Defendant, therefore denied that such alleged breach occurred within the State of Florida.

10. Without knowledge, therefore denied.

11. Denied, as the Court has ruled that Defendant Bradley is not subject to personal jurisdiction in the State of Florida.

12. Denied, as the Court has ruled that Defendant Mekosh is not subject to personal jurisdiction in the State of Florida.

13. Denied, as the Court has ruled that Defendant Dame is not subject to personal jurisdiction in the State of Florida.

14. Admitted solely for purposes of venue. Denied that Plaintiffs state a cause of action against KKM, therefore denied that such alleged cause(s) of action accrued in Broward County, Florida.

**General Allegations**

15. Without knowledge, therefore denied.

16. Denied as phrased. KKM did not have concurrent knowledge that Akai and SCI were having discussions relating to the subject products. Akai did not have any direct communications with KKM in this regard. At no point did KKM seek Akai's opinions, whether expert or otherwise, regarding KKM's products.

17. Without knowledge, therefore denied.

18. Without knowledge, therefore denied.

19. Without knowledge, therefore denied.

20. Without knowledge, therefore denied.

21. Without knowledge, therefore denied.

22. Without knowledge, therefore denied.

23. Without knowledge, therefore denied.

24. Without knowledge, therefore denied.

25. Without knowledge, therefore denied.

26. Admitted.

27. Admitted.

28. Admitted that SCI distributes and/or sells KKM-manufactured gun barrels. Otherwise, without knowledge, therefore denied.

29. The allegations of Paragraph 29 are too indefinite in terms of temporal scope to allow KKM to answer, therefore denied.

30. The allegations of Paragraph 30 are too indefinite in terms of temporal scope to allow KKM to answer, therefore denied.

31. The allegations of Paragraph 31 are too indefinite in terms of temporal scope to allow KKM to answer, therefore denied.

32. Without knowledge, therefore denied.

33. Without knowledge, therefore denied.

34. Without knowledge, therefore denied.

35. Admitted.

36. Denied.

37. KKM is without knowledge of how many KKM-manufactured barrels Akai may have purchased through channels other than direct orders from KKM, therefore denied.

38. Admitted.

39. Without knowledge, therefore denied.

40. Admitted. KKM does now know of any gun barrel manufacturer who does so unless it is upon request.

41. Admitted.

42. Without knowledge, therefore denied.

43. Without knowledge, therefore denied.

44. Without knowledge, therefore denied.

45. Without knowledge, therefore denied.

46. Denied.

47. Denied.

48. Without knowledge, therefore denied.

49. Without knowledge, therefore denied.

50. Without knowledge, therefore denied.

51. Without knowledge, therefore denied.

52. Without knowledge, therefore denied.

53. Without knowledge, therefore denied.

54. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing

on KKM-manufactured barrels, therefore denied as to the results of its testing.

55. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing.

56. Denied as phrased. On September 19, 2019 Horowitz left a message with KKM's front office merely noting that it had "problem" with one gun. He did not mention "soft" barrels or specific signs of failure at that time, nor did he discuss attempted repairs with KKM at that time. Without knowledge as to direct communications between Plaintiffs and SCI at that time, therefore denied.

57. Denied as phrased. On September 19, 2019 Horowitz left a message with KKM's front office merely noting that it had "problem" with one gun. He did not mention "soft" barrels or specific signs of failure at that time, nor did he discuss attempted repairs with KKM at that time. Without knowledge as to direct communications between Plaintiffs and SCI at that time, therefore denied.

58. Admitted that KKM has never received a return of a KKM-manufactured barrel due to the barrel being too "soft." Admitted that KKM desired the opportunity to inspect any allegedly "soft" barrels and therefore requested the return of any allegedly "soft" barrels from Akai, which request Akai refused to honor. Admitted that KKM is not in the business of giving away gun barrels for free.

59. Denied that McIntire or KKM told Horowitz that its lawyer advised KKM "not to worry about liability for the soft barrels." Admitted that KKM described to Horowitz its full gun barrel manufacturing process, including the testing and heat treating processes, but denied that any such conversation occurred on September

19, 2019, and denied that the allegations of Paragraph 59 fully and accurately describe the conversation.

60. Denied that KKM or its agents or representatives ever threatened to, or had any intention to, destroy evidence. Denied that KKM or its agents or representatives made "absurd assertions." Admitted that Akai and/or Horowitz refused to honor KKM's reasonable request to return any allegedly defective products to KKM.

61. Denied that McIntire had a conversation with Horowitz on September 19, 2019. Further, all of KKM's consumer stock is manufactured from 416R gun-barrel quality steel, so denied that McIntire or KKM told Horowitz otherwise.

62. Denied. All of KKM's consumer stock is manufactured from 416R gun-barrel quality steel, so denied that McIntire or KKM told Horowitz otherwise.

63. Denied.

64. Denied.

65. Denied as phrased. KKM never purchased BQ5 steel or manufactured any gun barrels out of BQ5 steel during the relevant years of 2017, 2018, or 2019. Further, the conversation referenced in Paragraph 65 and Exhibit 2 describes a former manufacturing process that KKM had not used for at least a decade prior to the conversation and which process was not in use at any relevant time period to this action including 2017, 2018, or 2019.

66. Admitted that Plaintiffs sent KKM the QC Metallurgical, Inc. test results. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing.

67. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Otherwise, denied.

68. The allegations of Paragraph 68 are ambiguous as to what the Plaintiffs intend by the use of the phrase "accept the return of any KKM barrel tested by QC Metallurgical," therefore KKM cannot properly frame a response. KKM desired the opportunity to inspect any allegedly "soft" barrels and therefore requested the return of any allegedly "soft" barrels from Akai, which request Akai refused to honor. Therefore, denied that KKM refused to accept the return of any KKM-manufactured barrels; rather, it was Akai which refused to return those barrels to KKM. Admitted that KKM refused to pay Akai for alleged costs which related to allegedly defective barrels that Akai refused to return to KKM for its own testing and inspection to determine whether the products were defective.

69. Denied that KKM manufactured defective barrels. Otherwise, without knowledge, therefore denied.

70. Denied that KKM manufactured defective barrels. Otherwise, without knowledge, therefore denied.

71. Denied that KKM manufactured defective barrels. Akai has failed and refused to comply with KKM's reasonable request to return any allegedly defective gun barrels. Therefore, denied that KKM has "refused to accept return" of barrels that KKM specifically requested that Akai return. during the relevant years of 2017, 2018, or 2019

72. Denied.

73. Denied.

74. To the extent that the allegations of Paragraph 74 purport to characterize or summarize the contents of a "public service announcement" published by Akai, the document speaks for itself, therefore denied.

75. Denied.

76. Upon information and belief, denied.

77. Without knowledge, therefore denied.

78. Without knowledge, therefore denied.

79. To the extent that the allegations of Paragraph 79 purport to characterize or summarize the contents of a Facebook post allegedly published by Dame, the document speaks for itself, therefore denied.

80. Denied.

81. Denied.

82. Without knowledge, therefore denied.

83. Without knowledge as to whether any KKM-manufactured barrels were given to Akai by third parties. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Denied that KKM manufactured defective barrels.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied that a "secret recall" of KKM-manufactured barrels ever occurred; therefore, there was no "recall" to advise the public of.

90. Admitted that KKM has not agreed to recall allegedly defective barrels when, despite reasonable request by KKM, Akai has failed and refused to return to KKM any such barrels for KKM's own independent inspection and testing.

91. Admitted that Akai made demand upon KKM, but denied that the sums demanded by Akai: (a) result from defective KKM-manufactured barrels or (b) bear a reasonable relationship to any actual damages sustained by Akai.

92. Denied that KKM "secretly" altered its website. Any modifications to KKM's website, made in the normal and ordinary course of KKM's business, were done on an open and publicly available website and, thus, were not "secret."

93. To the extent that the allegations of Paragraph 93 purport to characterize or summarize the contents of Exhibit "8," the document speaks for itself, therefore denied. Denied that the document is "false and defamatory."

94. To the extent that the allegations of Paragraph 94 purport to characterize or summarize the contents of Exhibit "8," the document speaks for itself, therefore denied. Admitted that Akai has failed and refused to return to KKM for its own inspection and testing any allegedly defective barrels, despite KKM's reasonable request that it do so.

95. Denied.

96. Denied.

97. To the extent that the allegations of Paragraph 97 purport to characterize or summarize the contents of the "Open Letter" allegedly published by KKM, the document speaks for itself, therefore denied. Otherwise, denied.

98. Denied that during the relevant years of 2017, 2018, or 2019 KKM used two different grades of steel. Denied that the Outokumpo steel purchased and used by KKM is "foreign produced."

99. Without knowledge, therefore denied.

100. Denied.

101. Without knowledge of any conversations between Vleiger and Plaintiffs that KKM was not a party to, therefore denied. Further, denied that KKM's consumer stock includes any "softer grade of steel that is easier for novice and/or less experienced gunsmiths to work with and fit into 1911 and 2011 based guns."

102. Without knowledge of any conversations between Vleiger and Plaintiffs that KKM was not a party to, therefore denied. Further, denied that during the relevant years of 2017, 2018, or 2019 KKM manufactured barrels using two different grades of steel. Otherwise, denied.

103. Without knowledge of what Vlieger may have said during an alleged phone call, therefore denied. Otherwise, denied.

104. Denied.

**<u>Count I – Misleading Advertising (KKM)</u>**

105. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as

though fully set forth herein.

106. To the extent that the allegations of Paragraph 106 purport to characterize or summarize the contents of KKM's website, the document speaks for itself, therefore denied.

107. To the extent that the allegations of Paragraph 107 purport to characterize or summarize the contents of KKM's website, the document speaks for itself, therefore denied.

108. Without knowledge, therefore denied.

109. Without knowledge, therefore denied.

110. Denied. All consumer stock KKM barrels are manufactured using certified 416R gun-barrel quality stainless steel.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

Demand for attorneys' fees: KKM has retained the services of the undersigned law firm to represent it in this action and is obligated to pay its fees and costs, for which Plaintiff Akai is liable pursuant to Fla. Stat. § 817.41(6).

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its attorneys' fees and costs of this action, and such further relief as this Court deems just and proper.

**Count II – Misleading Advertising (SCI)**

124. Count II does not state a cause of action against KKM, therefore no response is required. Otherwise, denied.

**Count III – Florida Deceptive and Unfair Trade Practices Act (KKM and SCI)**

150. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

151. The allegations of Paragraph 151 state a legal conclusion to which no response is required, therefore denied.

152. Denied.

153. The allegations of Paragraph 153 state a legal conclusion to which no response is required, therefore denied.

154. The allegations of Paragraph 154 state a legal conclusion to which no response is required, therefore denied.

155. Denied.

156. Denied.

157. Denied.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Admitted that Akai purchased KKM-manufactured gun barrels. Otherwise, denied.

163. Admitted that Akai purchased KKM-manufactured gun barrels. Otherwise, denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

Demand for attorneys' fees: KKM has retained the services of the undersigned law firm to represent it in this action and is obligated to pay its fees and costs, for which Plaintiff Akai is liable pursuant to Fla. Stat. § 501.211.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its attorneys' fees and costs of this action, and such further relief as this Court deems just and proper.

**Count IV – Fraudulent Inducement (KKM and SCI)**

170. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as

though fully set forth herein.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count V – Strict Liability (KKM and SCI)**

176. Count V has been dismissed, therefore no response is required. Otherwise, denied.

**Count VI – Breach of Express Warranties (KKM and SCI)**

188. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

189. The allegations of Paragraph 189 state a legal conclusion to which no response is required, therefore denied.

190. The allegations of Paragraph 190 state a legal conclusion to which no response is required, therefore denied.

191. The allegations of Paragraph 191 state a legal conclusion to which no response is required, therefore denied.

192. The allegations of Paragraph 192 state a legal conclusion to which no response is required, therefore denied.

193. To the extent that the allegations of Paragraph 193 purport to characterize or summarize the terms and conditions of Exhibit "9," the document speaks for itself, therefore denied. Further, to the extent that the allegations of Paragraph 193 purport to state a legal conclusion as to whether Exhibit "9" constitutes an "express warranty," no response is required, therefore denied.

194. To the extent that the allegations of Paragraph 194 purport to characterize or summarize the terms and conditions of Exhibit "9," the document speaks for itself, therefore denied. Further, to the extent that the allegations of Paragraph 194 purport to state a legal conclusion as to whether Exhibit "9" constitutes an "express warranty," no response is required, therefore denied.

195. To the extent that the allegations of Paragraph 195 purport to characterize or summarize the terms and conditions of Exhibit "9," the document speaks for itself, therefore denied. Further, to the extent that the allegations of Paragraph 195 purport to state a legal conclusion as to whether Exhibit "9" constitutes an "express warranty," no response is required, therefore denied.

196. Denied.

197. Denied that defects existed, therefore denied.

198. Denied.

199. Denied. Specifically, among other things Akai failed and refused to comply with KKM's reasonable request to return any allegedly defective barrels.

200. Denied.

201. Denied.

202. Denied.

203. Denied.

204. Denied.

205. Denied.

206. The allegations of Paragraph 206 are vague and ambiguous to the extent that they reference a "fire" that allegedly resulted from KKM-manufactured gun barrels, and KKM is unable to frame a response due to the uncertainty and ambiguity of this pleading, therefore denied. Otherwise, denied.

207. Denied that Akai is entitled to any UCC remedies, therefore denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count VII – Breach of Implied Warranty of Merchantability (KKM and SCI)**

208. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

209. The allegations of Paragraph 209 state a legal conclusion to which no response is required, therefore denied.

210. The allegations of Paragraph 210 state a legal conclusion to which no response is required, therefore denied.

211. Denied.

212. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue

judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count VIII – Breach of Implied Warranty of Fitness for a Particular Purpose (KKM and SCI)**

213. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

214. Denied.

215. Denied.

216. Denied.

217. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count IX – Revocation of Acceptance (KKM and SCI)**

218. KKM restates and incorporates its answers to Paragraphs 1 through 104 and 188 through 217 above, as though fully set forth herein.

219. Denied.

220. Denied that Akai provided KKM an "opportunity to cure," as Akai has failed and refused to comply with KKM's reasonable request to return any allegedly defective gun barrels. Therefore, denied.

221. Denied.

222. Denied.

223. Akai has failed and refused to comply with KKM's reasonable request to return any allegedly defective gun barrels. Therefore, denied that KKM has "refused to accept return" of barrels that KKM specifically requested that Akai return.

224. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count X – Defamation (KKM)**

225. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

226. Admitted for purposes of jurisdiction, but denied that Plaintiffs are entitled to any damages from KKM.

227. Denied that KKM requested that SCI post the "Open Letter" on SCI's Facebook page. Further denied that KKM has made defamatory statements regarding the Plaintiffs.

228. To the extent that the allegations of Paragraph 228 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

229. To the extent that the allegations of Paragraph 229 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

230. Denied that the "Open Letter" is false, misleading, defamatory, and malicious.

Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

231. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

232. Denied that the statements made by KKM are false.

233. Denied.

234. To the extent that the allegations of Paragraph 234 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied.

235. Denied.

236. Admitted that McIntire sent a photograph to Bradley, but denied that McIntire made any false or defamatory statements regarding the Plaintiffs.

237. Denied.

238. Denied.

239. Denied.

240. Denied.

241. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count XI – Defamation Per Se (KKM)**

242. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

243. Admitted for purposes of jurisdiction, but denied that Plaintiffs are entitled to any damages from KKM.

244. Admitted that KKM did not have its own social media page, but denied that KKM asked SCI to post information on its website. Further denied that KKM has made defamatory statements regarding Plaintiffs.

245. To the extent that the allegations of Paragraph 245 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

246. To the extent that the allegations of Paragraph 246 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

247. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective

barrels for inspection and testing, which request Akai has failed and refused to comply with.

248. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

249. Denied that KKM has made false statements.

250. Denied.

251. To the extent that the allegations of Paragraph 251 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied.

252. Denied.

253. Admitted that McIntire sent a photograph to Bradley, but denied that McIntire made any false or defamatory statements regarding the Plaintiffs.

254. Denied.

255. Denied.

256. The allegations of Paragraph 256 state a legal conclusion to which no response is required, therefore denied.

257. Denied.

258. Denied.

259. Denied.

260. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count XII – Defamation by Implication (KKM)**

261. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

262. Admitted for purposes of jurisdiction, but denied that Plaintiffs are entitled to any damages from KKM.

263. Admitted that KKM did not have its own social media page, but denied that KKM asked SCI to post anything on its page. Denied that KKM has made defamatory statements regarding the Plaintiffs.

264. To the extent that the allegations of Paragraph 264 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

265. To the extent that the allegations of Paragraph 265 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

266. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective

barrels for inspection and testing, which request Akai has failed and refused to comply with.

267. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

268. Denied that KKM made false statements.

269. Denied.

270. To the extent that the allegations of Paragraph 270 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied.

271. Denied.

272. Admitted that McIntire sent a photograph to Bradley, but denied that McIntire made any false or defamatory statements regarding the Plaintiffs.

273. Denied.

274. Denied.

275. The allegations of Paragraph 275 state a legal conclusion to which no response is required, therefore denied.

276. Denied.

277. Denied.

278. Denied.

279. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count XIII – Defamation (SCI, Bradley)**

280. Count XIII does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XIV – Defamation Per Se (Bradley, SCI)**

307. Count XIV does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XV – Defamation by Implication (Bradley, SCI)**

328. Count XV does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XVI – Defamation (Dame)**

356. Count XVI has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XVII – Defamation Per Se (Dame)**

435. Count XVII has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XVIII – Defamation by Implication (Dame)**

517. Count XVIII has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XIX – Defamation (Mekosh)**

601. Count XIX has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XX – Defamation Per Se (Mekosh)**

648. Count XX has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XXI – Defamation by Implication (Mekosh)**

697. Count XXI has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XXII – Commercial Disparagement (KKM)**

749. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

750. Admitted for purposes of jurisdiction, but denied that Plaintiffs are entitled to any damages from KKM.

751. Admitted that KKM did not have its own social media page, but denied that KKM asked SCI to post anything on its page.

752. To the extent that the allegations of Paragraph 752 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

753. To the extent that the allegations of Paragraph 753 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

754. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

755. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

756. Denied that KKM has made false statements.

757. Denied.

758. To the extent that the allegations of Paragraph 758 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied.

759. Denied.

760. Admitted that McIntire sent a photograph to Bradley, but denied that McIntire made any false or defamatory statements regarding the Plaintiffs.

761. Denied.

762. Denied.

763. Denied.

764. Denied.

765. Denied.

766. Denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**Count XXIII – Commercial Disparagement (SCI, Bradley)**

767. Count XXIII does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XXIV – Commercial Disparagement (Dame)**

795. Count XXIV has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XXV – Commercial Disparagement (Mekosh)**

875. Count XXV has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**Count XXVI – Civil Conspiracy to Commit Commercial Disparagement (KKM)**

923. KKM restates and incorporates its answers to Paragraphs 1 through 104 above, as though fully set forth herein.

924. Admitted for purposes of jurisdiction, but denied that Plaintiffs are entitled to any damages from KKM.

925. Denied.

926. Denied.

927. Denied.

928. Denied as to the existence of a "scheme" or "conspiracy." To the extent that the allegations of Paragraph 928 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

929. Denied as to the existence of a "scheme" or "conspiracy." To the extent that the allegations of Paragraph 929 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied. Otherwise, denied.

930. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

931. Denied that the "Open Letter" is false, misleading, defamatory, and malicious. Denied that QC Metallurgical, Inc. properly conducted Rockwell hardness testing on KKM-manufactured barrels, therefore denied as to the results of its testing. Admitted that KKM reasonably requested that Akai return any allegedly defective barrels for inspection and testing, which request Akai has failed and refused to comply with.

932. Denied as to the existence of a "scheme" or "conspiracy." Denied that KKM has made false statements.

933. Denied.

934. Denied as to the existence of a "scheme" or "conspiracy." To the extent that the allegations of Paragraph 934 purport to characterize or summarize the "Open Letter," the document speaks for itself, therefore denied.

935. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

936. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

937. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

938. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

939. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

940. Denied.

941. Denied.

942. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

943. Denied as to the existence of a "scheme" or "conspiracy." Otherwise, denied.

WHEREFORE, Defendant KKM Precision, Inc. respectfully requests that this Court issue judgment in its favor, deny Plaintiff the relief sought, award Defendant its costs of this action, and such further relief as this Court deems just and proper.

**<u>Count XXVII – Civil Conspiracy to Commit Commercial Disparagement (SCI, Bradley)</u>**

944. Count XXVII does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**<u>Count XXVIII – Civil Conspiracy to Commit Commercial Disparagement (Dame)</u>**

975. Count XXVIII has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

**<u>Count XXIX – Civil Conspiracy to Commit Commercial Disparagement (Mekosh)</u>**

1058. Count XXIX has been dismissed and does not state a claim against KKM, therefore no response is required. Otherwise, denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Qualified Privilege)**

KKM affirmatively alleges that the communications allegedly made by KKM were made in good faith, and were of interest to KKM as it improperly imputed that quality of the barrels it manufactured and in response to a demand letter. KKM further alleges its duty to defend its business practices were made pursuant to a moral or social obligation to clear its name. *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). Therefore, absent proof of actual malice, Plaintiffs' defamation claims must fail.

### SECOND AFFIRMATIVE DEFENSE
**(Substantial Truth Doctrine)**

Pursuant to Article 1, Section 4 of the Florida Constitution, KKM affirmatively alleges that that the statements made by KKM were substantially true. Upon information and belief, the barrels were improperly tested by Plaintiffs' consultant, and other malfunctions with Plaintiffs' weapons were a result of modifications and/or smithing, including but not limited to "stroking" and/or "sleeving" the barrels, resulting in less than ideal reliability for competition pistols. As a result, the alleged defamatory statements made by KKM were substantially true and made with good motives, and therefore no liability may befall KKM.

### THIRD AFFIRMATIVE DEFENSE
**(Failure of Conditions Precedent)**

KKM affirmatively alleges that Plaintiffs' claims are barred due to its failure to fulfill all

conditions precedent to maintaining this action including, but not limited to its failure to comply with: (1) reasonable requests to return the allegedly defective goods for inspection, (2) comply with KKM's terms and conditions requiring unused, uninstalled, and originally packed items for return, among other conditions.

**FOURTH AFFIRMATIVE DEFENSE**
**(Waiver)**

KKM affirmatively alleges, that the terms and conditions of its sales agreements and/or warranties are binding upon Plaintiffs, and Plaintiffs' claims for damages and/or subrogation are limited and/or waived by the terms of those agreements, including the duty to return allegedly defective products, the agreement to conduct warranty repairs/replacement on returned products.

**FIFTH AFFIRMATIVE DEFENSE**
**(Limitation of Liability)**

KKM affirmatively alleges that its liability, if any, is limited by the terms and conditions of KKM's sales agreement and/or its warranty.

**SIXTH AFFIRMATIVE DEFENSE**
**(Intervening, Superseding Cause)**

KKM affirmatively alleges that Plaintiffs' damages, if any, were caused by individuals or entities over which the KKM neither has control nor the right to control, including Plaintiffs' own gun smiths and/or independent contractors who bear responsibility for Plaintiffs' damages, if any, and for which the KKM is not technically, derivatively, or vicariously liable.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Comparative Fault)**

KKM affirmatively alleges that, although it has no liability to Plaintiff, any liability found

on its part, and any damages awarded in favor of the Plaintiff, are subject to comparative fault. KKM is not liable for more than its proportionate share of any economic and non-economic damages in relation to all other responsible parties and non-parties, after reduction for the Plaintiffs' comparative percentage of fault, including those for whom Plaintiff is responsible. This includes improper or inadequately tuned barrels, improper post-modification heat treatments, requesting and specifying changed manufactured barrels, and/or improper modification of barrel geometry.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Spoliation of Evidence)**

KKM affirmatively alleges that some or all of the Plaintiffs' claims may be barred by its spoliation of evidence because the Plaintiffs intentionally and/or negligently suppressed, altered, damaged, concealed, lost, and/or destroyed physical evidence within its control concerning the alleged defects in this case, thereby prejudicing KKM's ability to adequately defend against the Plaintiffs claims. KKM is entitled to a rebuttal presumption that Plaintiffs were negligent, and that such negligence the cause, or a substantial contributing cause of the damages it seeks to recover, and KKM is entitled to a jury instruction to that effect. *Public Health Trust of Dade County v. Valcin*, 507 So.2d 596 (Fla. 1987).

**NINTH AFFIRMATIVE DEFENSE**
**(Setoff)**

KKM affirmatively alleges that it is entitled to setoff for any settlements or awards obtained by Plaintiffs from any other parties or nonparties, as provided by Florida law, and from any collateral sources of indemnity.

**TENTH AFFIRMATIVE DEFENSE**
**(No Damages)**

KKM affirmatively alleges that Plaintiff has not sustained damages and the law furnishes a remedy only for such wrongful acts as result in injury or damage. *Scott-Steven Dev. Corp. v. Gables by the Sea, Inc.*, 167 So. 2d 763, 764 (Fla. 3d DCA 1964).

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Estoppel)**

KKM affirmatively alleges that Plaintiffs are estopped from recovering some or all of its alleged damages. KKM affirmatively alleges that Plaintiffs requested certain dimensional changes on barrels from KKM. In reliance thereon, some KKM barrels were sold to Plaintiffs with those changes. Plaintiffs should now be estopped from claiming defects on these barrels for which Plaintiffs specified, received prototypes for, and approved.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

KKM affirmatively alleges that Plaintiffs are precluded from recovery due to unclean hands. In particular, KKM alleges that Plaintiffs attempted to defraud KKM by alleging improper barrel hardness to cover for Plaintiffs' high rate of malfunctions. As Plaintiffs were *in pari delicto*, Plaintiffs are precluded from recovery as a matter of law.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Injury to Reputation Damages are Barred)**

KKM affirmatively alleges that to the extent that Plaintiffs are seeking damages for loss of revenue allegedly arising from an injury to reputation stemming from breach of warranty, they are barred as a matter of law. *See Allied Chem. Corp. v. Eubanks Indus., Inc.*, 155 So. 2d 740, 741 (Fla. 3d DCA 1963); *Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 2004 WL 4946483 (S.D. Fla.

2004).

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Prove Special Damages)**

KKM affirmatively alleges that any economic losses from Plaintiffs are not caused by the alleged defamation, commercial disparagement, or statements made from KKM. Upon information and belief, Plaintiffs' sales figures and numbers were declining prior to the publication of any statements, and as a result cannot be causally linked to any alleged defamation or sales of barrels on the part of KKM.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(Limitation of Available Damages)**

KKM affirmatively alleges that the Plaintiffs' available damages arising from its claim for breach of the Florida Deceptive and Unfair Business Practices Act are limited to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). To the extent that Plaintiffs seek damages in excess of that formulation, including but not limited to, damages for alleged damage to guns, damages allegedly resulting from a recall, or other consequential damages, such damages are barred under FDUTPA. *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008).

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(Lack of Privity)**

KKM affirmatively alleges that the Plaintiffs' UCC claims against KKM, including breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose, are barred as to KKM with respect to those barrels that Plaintiffs allegedly

purchased from SCI due to a lack of privity between Plaintiffs and KKM with respect to those barrels. *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*, 500 So. 2d 688, 693 (Fla. 3d DCA 1987); *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988).

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(Transaction Between Merchants)**

KKM affirmatively alleges that the Plaintiffs are deemed to be "merchants" pursuant to the Uniform Commercial Code, and any transaction(s) between KKM and the Plaintiffs shall constitute a transaction between merchants in which both parties are chargeable with the knowledge and skill of merchants.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Mitigate)**

KKM affirmatively alleges that Plaintiffs' damages, if any, are barred or reduced to the extent said damages were incurred as a result of Plaintiffs' failure to mitigate. Specifically, Plaintiffs failed to adequately cover their losses and/or mitigate their losses by accepting replacement and/or warranty barrels from either KKM and/or other producers and/or resellers.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Excusal of Performance)**

Plaintiffs failed to complete its' obligations as required by the terms and conditions of KKM's sales agreement, by among other things, failing to comply with SCI's and/or KKM's reasonable requests for inspection and/or return. As a result, KKM was excused from further performance with Plaintiffs.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF to Richard J. Fiato, Esq., Law Offices of Fiato, 550 W. Merrill St., Ste. 200, Birmingham, MI 48009 (fiatolaw@gmail.com); Edmund S. Yee, Esq., McKelvie, McKelvie, Yee & Epacs, P.C. 280 W. Maple Rd., Ste. 220, Birmingham, MI 48009 (eyee@mmyelaw.com); Kir-Sheng Chen, Esq. and John A. Chiocca, Esq., Cole, Scott & Kissane, P.A., 222 Lakeview Ave., Ste. 120, West Palm Beach, FL 33401 (kir-sheng.chen@csklegal.com; john.chiocca@csklegal.com; stephanie.chiocca@csklegal.com; susan.miller@csklegal.com); Nicholas D. Freeman, Esquire, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 111 N. Orange Ave., Ste. 1200, Orlando, FL 32801 (nicholas.freeman@wilsonelser.com), this 12th day of October, 2021.

*/s/ Kevin Robinson*
Kevin P. Robinson, Esquire
Florida Bar No.: 0014650
ZIMMERMAN, KISER & SUTCLIFFE, P.A.
315 E. Robinson St., Suite 600 (32801)
P.O. Box 3000
Orlando, FL 32802
Telephone: (407) 425-7010
Facsimile: (407) 425-2747
Counsel for Defendant, KKM Precision, Inc.
krobinson@zkslawfirm.com
jwenhold@zkslawfirm.com
service@zkslawfirm.com

KPR/kpr