UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:20-cv-61469-XXXX

AKAI CUSTOM GUNS, LLC,
a Florida Limited Liability Company,
and SHAY HOROWITZ, an Individual,

      Plaintiffs,

vs.

KKM PRECISION, INC. a Nevada Corporation,
SHOOTERS CONNECTION, INC., a Kentucky
Corporation, CHARLES BRADLEY, an Individual
and Kentucky Resident, TIMOTHY MEKOSH,
an Individual and Kentucky Resident, and MICHAEL
DAME, a Canadian Citizen and Kentucky Resident.

      Defendants.

_____/

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants, KKM PRECISION, INC. ("KKM"), SHOOTERS CONNECTION, INC. ("SHOOTERS"), CHARLES BRADLEY ("BRADLEY"), TIMOTHY MEKOSH ("MEKOSH"), and MICHAEL DAME ("DAME"), (collectively, the "Defendants") hereby file this Motion to Dismiss in response to the First Amended Complaint (the "Complaint") filed by Plaintiffs, AKAI CUSTOM GUNS, LLC and SHAY HOROWITZ ("Plaintiffs") [ECF No. 9-1] in accordance with the applicable Federal Rules of Civil Procedure and in support thereof state as follows:

## INTRODUCTION

Plaintiffs assert twenty-nine (29) counts in the Complaint against the Defendants. Simply put, Plaintiffs lawsuit stems from Plaintiffs allegations that KKM manufactured and SHOOTERS sold Plaintiffs defective gun barrels which are allegedly failing to hold specifications and tolerances, and as a result, Plaintiffs are allegedly suffering for recall costs, lost revenue, damage to their reputation and loss of future revenue. *See* [ECF No. 9-1]. In addition, Plaintiffs assert counts for defamation, defamation per se, defamation by implication, commercial disparagement and civil conspiracy to commit commercial disparagement against the Defendants. For the reasons

1

detailed below, Plaintiffs' complaint contains numerous deficiencies. Moreover, the court lacks personal jurisdiction over BRADLEY, DAME, and MEKOSH. Accordingly, this Court must dismiss the Complaint.

## **MEMORANDUM OF LAW**

**I.      Dismissal for Failure to State a Claim**

   **a.   Standard**

To satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim that fails to state a claim upon which relief can be granted.   In order to survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In deciding whether to dismiss, the court must accept as true all allegations of the complaint and construe those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 235 (1974).

   **b.   Counts I and II must be dismissed because Plaintiffs improperly and prematurely seek punitive damages.**

"In a diversity case the Court applies the substantive law of Florida. And, federal courts have recognized that the right to punitive damages is a substantive right governed by Florida substantive law." *Hargrove-Davis v. State Farm Mut. Auto. Ins.*, 2018 U.S. Dist. LEXIS 176385, *3, 2018 WL 4963733 (M.D. Fla. 2018). Florida Statute § 768.72, states in pertinent part:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend its complaint to assert a claim for punitive damages as allowed by the Rules of Civil Procedure…

In *Globe Newspaper Co. v. King*, 658 So. 2d 518 (Fla. 1995), the Supreme Court of Florida stated: "We read § 768.72 to create a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." As this Court is likely aware,

1301536v.1

punitive damages are damages meant to "punish a defendant or to act as a deterrent." *First Specialty Ins. v. Caliber One Indem. Co.*, 988 So.2d 708, 713 (Fla. 2d DCA 2008). Here, Plaintiffs have failed to comply with the procedural requirements of §768.72; therefore, the Court should dismiss Counts I and II as Plaintiffs improperly assert a claim for punitive damages. *See* [ECF No. 9-1 at ¶¶122, 123(e), 148, 149(e)].

### c. Counts III-IX, XIII-XV, XXIII, and XXVII must be dismissed as Plaintiffs improperly lump multiple defendants together.

When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8. *See Lane v. Capital Acquisitions & Mgmt., Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [] Complaint fails to satisfy the minimum standard of Rule 8."). While a complaint against multiple defendants may be "read as making the same allegation against each defendant individually," the "factual allegations must give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." *George & Co., LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940, at * 2 (M.D. Fla. Dec. 13, 2011) (citations omitted; see also *Centrifugal Air Pumps Australia v. TCS Obselete, LLC,* No. 6:10-cv-820-Orl-31 DAB, 2010 WL 3584948, at *2 (M.D. Fla. Sept. 9, 2010) (criticizing the practice of "lumping" when it rendered "the factual underpinnings of the [c]omplaint practically incomprehensible" and created a conflicting description of events).

Counts III, IV, V, VI, VII, VIII, and IX assert causes of action against both KKM and SHOOTERS. Further, Counts XIII, XIV, XV, XXIII, and XXVII assert causes of action against both BRADLEY and SHOOTERS. As evidenced upon a review of Plaintiffs' Complaint, the allegations asserted against KKM, SHOOTERS and BRADLEY are vague, confusing and ultimately fail to hone in on the alleged conduct of each defendant. Further, the claims fail to articulate the factual basis for each defendants' purported liability. As such, this Court should grant the instant motion and dismiss Counts III-IX, XIII-XV, XXIII, and XXVII because Plaintiffs improperly lump multiple defendants together in multiple counts and KKM, SHOOTERS and BRADLEY are unable to distinguish the allegations made against each defendant. Plaintiffs should be required to set forth their vague allegations with more specificity.

### d. Plaintiffs' Complaint must be dismissed as Plaintiffs improperly plead fraud based on "information and belief."

Plaintiffs plead fraud in the Complaint, and they further state their allegations are upon "information and belief" approximately 322 times. *See e.g.*, [ECF No. 9-1 at ¶¶781-782, 785, 1061-1062]. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." By pleading based on "information and belief" without adequately setting forth supporting facts on which the belief is founded, Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard. *United States v. Clausen,* 290 F.3d 1301, 1310 (11th Cir. 2002) (When Rule 9(b) applies, "pleadings generally cannot be based on information and belief[.]") (citation omitted); *see Ferrell v. Durbin*, 311 Fed. App'x. 253, 259 n. 8 (11th Cir. 2009) (unpublished decision) (finding several instances where the appellants, when pleading based on "information and belief," failed to allege with particularity any factual basis on which the information and belief was founded, and failed "to allege with particularity facts giving rise to a strong inference" that the defendant intended to deceive the plaintiffs). Because Plaintiffs are alleging fraudulent conduct and statements, Plaintiffs must satisfy Rule 9(b), and because Plaintiffs' allegations do not satisfy Rule 9(b), the Complaint must be dismissed.

### e. Count II must be dismissed as Plaintiffs' misleading advertising count fails as it necessarily relies on the representations of another website.

The thrust of Plaintiffs' misleading advertising claim rests in the theory that SHOOTERS, by relying on the Rockwell hardness specifications listed on KKM Precision's website, SHOOTERS engaged in misleading advertising. This is incorrect. Under Florida law, to state a cause of action under §814.41(1), the Plaintiff must allege (a) the representor <u>made a misrepresentation</u> of material fact; (b) the representor knew or should have known the falsity of the statement, (c) intention to induce another to rely, and (d) damages in justifiable reliance. *Joseph v. Liberty Nat. Bank*, 873 So. 2d 384 (Fla. 5th DCA 2004) (emphasis added). The definition of misleading advertising includes the requirement that <u>the representor make or disseminate oral, written</u> or printed statements. *Id.*

Here Plaintiffs attempt to attribute statements made from KKM's website to SHOOTERS, despite neither statements regarding Rockwell hardness ("RC") nor any references to 416R gun-barrel steel on the Shooters' Connection website. Indeed, Plaintiffs allege, "SCI [SHOOTERS]…omits any material information regarding the type of steel the KKM barrels SCI [SHOOTERS] sells are made of…<u>forcing it customers to go to the KKM website</u> to obtain KKM

4

barrel specification information." [ECF No. 9-1 at ¶134]. Plaintiffs then further alleges, "SCI's [SHOOTERS'] misleading advertising viewed in conjunction with KKM's misleading advertisement and claim that [the barrels were allegedly not the same quality]." [ECF No. 9-1 at ¶136]. It follows then, as SHOOTERS has allegedly made neither representation regarding the steel quality nor Rockwell hardness, SHOOTERS cannot have "made a misrepresentation of material fact." It is in fact, Plaintiffs who are cross referencing both websites to create the alleged misrepresentation. Furthermore, even if the barrels were allegedly not 416R or 42RC, SHOOTERS cannot be said to have made an affirmative representation regarding these two characteristics. Consequently, this count should be dismissed for failure to state a cause of action.

### f. Count IV must be dismissed as Plaintiffs failed to state a claim for fraudulent inducement.

In Count IV of Plaintiffs' Amended Complaint Plaintiff Horowitz, together with Plaintiff Akai, purports to assert a claim against KKM and SHOOTERS for fraudulent inducement. Count IV must be dismissed because Plaintiff Horowitz did not purchase any KKM-manufactured gun barrels and thus does not have standing to assert a claim for fraudulent inducement against KKM or SHOOTERS resulting from Akai's purchase of KKM gun barrels.

The relevant facts upon which Plaintiffs' claims in Count IV are based are contained in Paragraphs 37 through 40. In those Paragraphs the Plaintiffs alleged that between "August 2017 until approximately October of 2019, AKAI purchased 188 KKM barrels. . . ." Amended Complaint at ¶ 37. Plaintiffs allege that "AKAI purchased 58 KKM barrels directly from KKM." *Id*. at ¶ 38. "AKAI purchased an additional 115 KKM barrels directly from SCI [SHOOTERS]." *Id*. at ¶ 39. Plaintiffs then allege that "none of the KKM barrels purchased by AKAI from KKM or SCI" had certain quality control information included. *Id*. at ¶ 40. In each substantive allegation the Plaintiffs allege that it was Akai, not Horowitz, which purchased the KKM-manufactured gun barrels. Conversely, nowhere in the substantive allegations of the Amended Complaint due the Plaintiffs allege that Horowitz himself purchased KKM-manufactured gun barrels.

Notwithstanding the fact that each of the subject gun barrels upon which the Plaintiffs' claims are based were purchased by Akai, not Horowitz, Count IV has been asserted by both Plaintiffs jointly for alleged fraudulent inducement. It is axiomatic that to assert a claim for fraudulent inducement, one must have been induced into doing something. *See e.g., Sena v. Pereira*, 179 So. 3d 433, 436 (Fla. 4th DCA 2015)(explaining that one of the requisite elements of

5

a fraudulent inducement claim is that the plaintiff relied to his or her detriment on the false statement).  In this case, the alleged reliance was purchasing KKM-manufactured gun barrels.  *See* Amended Complaint at ¶¶ 171 – 174.  Since Plaintiff Horowitz does not allege that he purchased any KKM-manufactured gun barrels, he cannot state a claim for fraudulent inducement as he cannot prove the essential element of detrimental reliance on the alleged fraudulent misrepresentations, and Count IV of the Amended Complaint must be dismissed.

Further, Plaintiffs fail to identify any statements they allege KKM and/or SHOOTERS made which induced Plaintiffs to purchase the at-issue barrels.  *See* Rule 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  Plaintiffs' allegations are conclusory, unsupported and lack particularity; therefore, this Court should dismiss Count IV.

### g.  **Count V must be dismissed as Plaintiffs have failed to state a claim for strict liability.**

In Count V of their Amended Complaint, the Plaintiffs purport to assert a cause of action for strict liability against KKM and SHOOTERS.  In support of that claim, Plaintiffs allege that the subject KKM-manufactured gun barrels "were made from a type of steel that was not reasonable or proper . . . rendering the barrels unfit for normal and customary use as 1911/2011 pistols [sic] barrels . . . and as a result, would fail and destroy any pistol and causing [sic] possible injury or death. . . ."  Amended Complaint at ¶ 179.  Plaintiffs repeat that phrasing in Paragraph 180, alleging that the KKM-manufactured gun barrels "would caus[e] *possible* injury or death." (Emphasis added).  Plaintiffs later claim that the alleged defects in the gun barrels "destroyed AKAI's pistols."  *Id*. at ¶ 185.  Plaintiffs assert that the damage to their pistols allegedly resulting from the gun barrels included "compacted surfaces, folded metal, or compacted metal on the hood and lugs, or any of the lock up surfaces."  *Id*. at ¶ 186.  Conversely, nowhere in the Amended Complaint do the Plaintiffs allege any actual (as opposed to hypothetically possible) personal injury resulting from the KKM-manufactured gun barrels.

The seminal case discussing strict liability in Florida is *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976)(emphasis added).  In *West* the Florida Supreme Court held that "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury *to a human being*."  (Emphasis added).  In the instant case the only damage that the Plaintiffs claim to

have resulted from the KKM-manufactured gun barrels is damage to the product itself. Plaintiffs allege absolutely no personal injury. Therefore, Plaintiffs have failed to state a claim for strict liability against KKM and/or SHOOTERS, and Count V must be dismissed.

Plaintiffs' strict liability claims are not saved by arguing that the alleged defects in the barrels caused damage to "other property." In Count V Plaintiffs claim that alleged defects in KKM-manufactured gun barrels "destroyed ***AKAI's pistols***." Amended Complaint at ¶ 185 (emphasis added). Conversely, Plaintiffs do not allege any damage to other property than the Akai pistols in which the KKM-manufactured gun barrels were allegedly installed. Taking Plaintiffs' allegations as true, KKM's allegedly defective barrels only caused damage to "the other components of AKAI's pistols." Plaintiffs' claim therefore fails, because "the other components of AKAI's pistol's" which they claim were damaged by the KKM barrels are not "other property" within the meaning of Florida's strict liability jurisprudence.

The standard for injury to "other property" is not satisfied in cases where, as here, the "other" property damage claimed is only that caused by an allegedly defective component part to the end-product (i.e., the gun or other components contained therein). The case most on point is *American Universal Ins. Group v. General Motors Corp.*, 578 So. 2d 451, 453 – 54 (Fla. 1st DCA 1991)(holding that since a manufacturer's replacement oil pump was an integral or component part of its engine such that the engine's destruction when the pump malfunctioned did not result in damage to "other property" that would support strict products liability recovery); *see also Casa Clara Condo. Ass'n v. Charley Toppino & Sons*, 620 *So.*2d 1244, 1245 (Fla.1993) (economic loss doctrine bars claim against concrete provider for building where there was no damage to anything other than building itself); *Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913 *So.*2d 714, 717 (Fla.Dist.Ct.App.2005) (explaining that "[t]he airframe and engine are not two separate pieces of property-they are one product" and that "[c]ourts have refused to bifurcate products into parts where a component part harms or destroys the finished product"); *Jarmco, Inc. v. Polygard, Inc.*, 668 *So.*2d 300 (Fla.Dist.Ct.App.1996) (economic loss doctrine bars claim against distributor of boat resin where only damage was to boat itself); *GAF Corp. v. Zack Co.*, 445 So.2d 350 (Fla. 3d DCA 1984) (roofing contractor could not recover in tort against manufacturer of defective roofing materials incorporated by contractor in certain jobs). Because the Plaintiffs' own allegations in the instant case only allege damage to "other components of AKAI's pistols,"

Plaintiffs fail to allege the *prima facie* requirement of necessary damage to other property to maintain a claim for strict liability. Accordingly, Count V must be dismissed.

### h. Counts VI, VII, VIII, and IX must be dismissed as Plaintiffs have failed to satisfy conditions precedent.

Counts VI, VII, and VIII of the Amended Complaint purport to assert claims against KKM and SHOOTERS for Breach of Express Warranties, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose, respectively. Count IX purports to assert a claim for Revocation of Acceptance. Each of these claims must be dismissed for failure to satisfy a necessary condition precedent due to the Plaintiff's refusal to return the subject gun barrels despite KKM's request and failure to give adequate notice of revocation of acceptance.

Each of Counts VI through IX are governed by Article 2 of the UCC, found in Fla. Stat. Ch. 672. In those Counts, Plaintiffs allege that upon becoming aware of alleged defects in the KKM-manufactured gun barrels, Akai put KKM on notice of the alleged defects (Amended Complaint at ¶ 197) but that "KKM has refused to honor its express warranty to AKAI" (*id*. at ¶ 200) which included the "repair and/or exchange of defective parts" (*id.* at ¶ 201) and that "KKM and SCI [SHOOTERS] have nevertheless refused to accept return of the barrels and refused to refund AKAI's purchase price." (*Id*. at ¶ 223). Plaintiffs reiterate that the terms of the alleged express warranty were such that KKM and SHOOTERS would "remedy within a reasonable time, any defects which had not been or could not have been discovered prior to acceptance." *Id*. at ¶ 204. Of course, for Defendants to have the opportunity to attempt to "repair" or "remedy" the alleged defects in the gun barrels, the Plaintiffs would have to return those gun barrels to KKM and/or SHOOTERS for inspection. The Plaintiffs admit that they refused to do so. *See* Amended Complaint at ¶ 60.

The Plaintiffs' own allegations disprove the claims made in Counts VI through IX. Specifically, Para. 56 through 58 of the Amended Complaint discuss Plaintiffs' notice to KKM and SHOOTERS of the alleged defects in the products. In describing the parties' communications, Plaintiff alleged that "McIntire [of KKM] wanted HOROWITZ to send KKM the allegedly soft barrels so McIntire would advise how AKAI was testing the barrels wrong because KKM 'was not in the business of giving away barrels for free.'" *Id.* at ¶ 58. Stated differently, Plaintiffs acknowledge that KKM requested a return of the allegedly defective product so that KKM could

1301536v.1

determine if a material defect actually existed before replacing or refunding the product. Despite KKM's explicit request to return the allegedly defective product, "HOROWITZ decided to retain all defective KKM barrels in its possession. . . ." *Id*. at ¶ 60. Plaintiffs' allegation in Paras. 58 and 60 acknowledging that KKM requested a return of the subject gun barrels but that Plaintiffs "decided to retain all defective KKM barrels in [their] possession" expressly negates the relevant allegations of Counts VI through IX. The allegations of Paragraphs 58 and 60 negate the subsequent allegation in Para. 223 that "KKM has refused to honor its express warranty to AKAI" and the allegations of Para. 200 that "KKM has refused to honor its express warranty to AKAI" (which Akai prevented KKM from doing by refusing to return the barrels). The allegations of Paras. 58 and 60 likewise negate the subsequent allegations of Para. 220 that "[a]fter numerous attempts by KKM to cure, it has become apparent that said non-conformities cannot be seasonably cured." Not only do the allegations of Para. 58 and 60 negate the subsequent allegations, but the allegations of Paras. 200 and 220 are themselves directly inconsistent (which is the case: did KKM refuse to honor its warranty, or did it attempt to cure numerous times unsuccessfully, and if the latter, how did KKM attempt to cure numerous times if Plaintiffs decided to retain all allegedly defective barrels?). It is apparent that the Plaintiffs' General Allegations constitute their statement of the facts, while the inconsistent allegations within Counts VI through IX are their attempt at rote application of the elements of the claims. This contradiction is further evidenced by Plaintiffs' own exhibits attached to the Complaint which evidence SHOOTERS' request to Plaintiffs to provide "a pair of bad barrels" and SHOOTERS would "forward them to Luke [of KKM] and ask him to take a look"—even where SHOOTERS offered to have the barrels shipped at its expense. *See* [ECF No. 9-1 at Ex. 3-7]; *see also See Griffin Industries, Inc. v. Irvin*, 496 F. 3d 1189 (11th Cir. 2007) (where allegations within a complaint conflict with exhibits, exhibits control).

Akai alleges that it has particular knowledge, skill, and expertise with respect to the manufacture of custom firearms. *See* Amended Complaint at ¶¶ 15 – 22 (describing at length Akai's expertise in this area as a "world-class gun builder" whose firearms are "used by some of the best competition shooters in the world," "to win 3 National USPSA Championships," and have been "featured in and used in the production of" feature films). As a part of its manufacturing process, Akai acquires pistol barrels from manufacturers and distributors for incorporation into its firearms. *Id*. at ¶ 23. Based upon the forgoing, Akai is deemed a "merchant" with respect to firearms and their components under Fla. Stat. § 672.104(1), which defines a "merchant" as "a

9

person who deals in goods of the kinds or otherwise by occupation holds himself or herself out as having knowledge or skill peculiar to the practices or goods involved in the transaction. . . .” Thus, the sale of KKM-manufactured gun barrels to Akai would constitute a transaction “between merchants” under Fla. Stat. § 672.104(3).

If a merchant buyer desires to reject goods, the merchant buyer must comply with Fla. Stat. § 672.603.  That statute states, in pertinent part, that “when the seller has no agent or place of business at the market of rejection ***a merchant buyer is under a duty after rejection of goods in her or his possession or control to follow any reasonable instructions received from the seller with respect to the goods*** and in the absence of such instructions to make reasonable efforts to sell them for the seller’s account if they are perishable or threaten to decline in value speedily.”  Fla. Stat. § 672.603(1)(emphasis added).   Only when the seller of the rejected goods “gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller’s account or reship them to him or her or resell them for the seller’s account with reimbursement as provided in the preceding section.”   Fla. Stat. § 672.604.   The same principles apply to revocation of the purchase of goods as to rejection.  Fla. Stat. § 672.608(3).

In the instant case, the Plaintiffs acknowledge that despite KKM and SHOOTERS’ request for a return of the gun barrels the Plaintiffs refused to do so.  Amended Complaint at ¶¶ 58, 60.  In refusing to return the barrels to KKM and/or SHOOTERS at their request, Plaintiffs have breached their duties under Fla. Stat. § 672.603 “to follow any reasonable instructions received from the seller with respect to the goods.”  It is axiomatic that if a buyer of goods desires to make a warranty claim, the buyer must tender the goods to the seller to inspect and, if appropriate, repair or replace them.[1]  This principle is as old as Florida warranty law.  *See American Mfg. Co. v. A.H. McLeod & Co.*, 82 So. 802 (Fla. 1919)(holding that “[a] vendor who has sold goods which the purchaser claims are inferior to the goods bargained for may demand the return of the good. . . . If he does this and the purchaser refuses to return the goods, the purchaser will be held to the contract price, as he will be presumed to have waived the defects.”); *C.F. &A.C. Mizell v. I.H. & W.L. Watson*, 49 So. 149 (Fla. 1909)(rejecting a warranty claim where the buyer refused offer to return an allegedly defective product).

---

[1] Imagine buying a product from a retailer, being dissatisfied with its condition upon opening it at home, and then demanding a refund from the retailer while at the same time refusing to return it. Holiday exchange season would be forever changed.

After rejection of goods, any exercise of ownership by the buyer is wrongful as against the seller. Fla. Stat. § 672.602(2)(a). Revocation of acceptance is not effective until the buyer notifies the seller of it, with notification a necessary precondition to imposing liability on the seller. Fla. Stat. § 672.608(2); *Golden Needles Knitting and Glove Co., Inc. v. Dynamic Marketing Enterprises, Inc.*, 766 F.Supp. 421 (W.D. NC 1991)(applying Florida law). A merchant buyer is held to a higher standard than a consumer buyer with regard to the content of a notice of revocation. *See* Official Comment 5 to U.C.C. § 2-608. Plaintiffs detail their discussions with KKM and SHOOTERS in Paras. 56 through 62 of the Amended Complaint. Nowhere in those provisions do the Plaintiffs allege that they notified KKM and/or SHOOTERS that they were revoking acceptance of the gun barrels. *See generally* Counts VI through IX.

Because the Plaintiffs in the instant case have: (a) explicitly refused to return the subject gun barrels to KKM and/or SHOOTERS despite KKM and SHOOTERS' requests that they do so and (b) have failed to give adequate notice of rejection as required by Fla. Stat. § 672.608, the Plaintiffs have failed to satisfy necessary conditions precedent to their UCC claims in Counts VI through IX, which must be dismissed.

### i. Count VIII must be dismissed as Plaintiffs have failed to state a claim for breach of the implied warranty of fitness for a particular purpose.

Count VIII of the Amended Complaint purports to state a claim against KKM and SHOOTERS for breach of the implied warranty of fitness for a particular purpose. Plaintiffs fail to state a claim in Count VIII, as Plaintiffs fail to allege how Akai's use of the KKM-manufactured gun barrels are particular or unusual to it and different in any way from the purpose for which the gun barrels are ordinarily used.

A "particular purpose," as that term is used in the Uniform Commercial Code provision governing the implied warranty of fitness for a particular purpose,[1] differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business, whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses that are customarily made of the goods in question. *See* Official Comment 2 to U.C.C. § 2-315 (contrast this with the test for the merchantability of goods, which is that the goods be fit for the ordinary purposes for which such goods are used). For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains,

11

and in that case an implied warranty would arise that the shoes are suitable for such purpose. *See id.* In contrast, no implied warranty of fitness for particular purpose arises in the sale of a copying machine where the buyer's expressed intent is simply to use it for photocopying. *Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 37 U.C.C. Rep. Serv. 429 (11th Cir. 1983) (applying Florida law). A complaint that fails to allege a particular or unusual use, different from the purpose for which the item sold is ordinarily used, does not state a cause of action for breach of the implied warranty of fitness for a particular purpose. *Fred's Excavating & Crane Service, Inc. v. Continental Ins. Co.*, 340 So. 2d 1220 (Fla. 4th DCA 1976).

Here, Akai alleges that it "manufactures custom 1911 and 2011 based pistols used primarily for shooting competitions in the United States and various countries throughout the world." Amended Complaint at ¶ 15. Akai further alleges that "KKM manufactures barrels to be used in 1911 and 2011 pistol [sic]." *Id.* at ¶ 27. Akai alleges that it purchased the KKM-manufactured gun barrels that are the subject of this law suit "to manufacture 1911 and 2011 based pistols used primarily for shooting competitions in the United States and various countries around the world." *Id.* at ¶ 214. Thus, Akai's claims in Count VIII are that it purchased gun barrels that "KKM manufactures barrels to be used in 1911 and 2011 pistol[s]" for the unique purpose of . . . using them in 1911 and 2011 based pistols. Stated differently, Akai purchased the subject gun barrels for the ordinary purpose in which these gun barrels are used. The Amended Complaint fails to allege a particular or unusual use, different from the purpose for which the KKM-manufactured gun barrels are ordinarily used, and therefore it does not state a cause of action for breach of the implied warranty of fitness for a particular purpose requiring dismissal of Count VIII.

### j. Counts XI, XIV, XVII, and XX must be dismissed as it fails to properly plead a claim for defamation *per se*.

To successfully plead a claim for defamation per se, Plaintiffs must allege the "identity of the particular person to whom the remarks were made with a reasonable degree of certainty" to afford the defendant "enough information to determine affirmative defenses." *Ward v. Triple Canopy, Inc.*, 2017 U.S. Dist. LEXIS 115472, at *4 (M.D. Fla. July 25, 2017) (citing *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981) (additional citations and internal quotations omitted)). In the Amended Complaint, Plaintiffs allege the allegedly defamatory statements "[w]ere published via Facebook on the internet in this Circuit and the

County of Broward, domestically and internationally *for the entire world to see and hear*[].” *See* [ECF No. 9-1 at ¶326] (emphasis added); *see also* [ECF No. 9-1 at ¶¶259, 514, 695]; *Aflalo v. Weiner*, 2018 U.S. Dist. LEXIS 110134, *13, 2018 WL 3235529 (S.D. Fla. 2018) (“Plaintiff's assertion that the Statement was put on Defendant's Facebook wall "for all to see" fails to identify those persons to whom the Facebook post was published with a reasonable degree of certainty. As such, it is also for this reason that the amended complaint should be dismissed with leave to amend.”). Accordingly, counts XI, XIV, XVII, and XX should be dismissed because Plaintiffs fail to sufficiently identify the person or entity that the allegedly defamatory statements were made to.

## II.  Dismissal for Lack of Personal Jurisdiction over BRADLEY, DAME, and MEKOSH.

### a.  Standard

“Under Federal Rule of Civil Procedure 12(b)(2), ‘[a] court must dismiss an action against a defendant over which it has no personal jurisdiction.’” *Kennedy v. Heidi Motel Inc.*, No. 19-60946-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 104352, at *5 (S.D. Fla. June 19, 2019) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011)). “This Court must address Defendant's claim that this Court lacks personal jurisdiction because ‘[a] court without personal jurisdiction is powerless to take further action.’” *Bulpit, LLC v. Decanio*, No. 13-14119-CIV-MOORE, 2013 U.S. Dist. LEXIS 202893, at *5 (S.D. Fla. June 7, 2013) (quoting *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)).

“A federal court may exercise personal jurisdiction over a nonresident defendant only if both prongs of the two-part analysis are satisfied: (1) the court has jurisdiction over the defendant under the state long-arm statute; and (2) sufficient minimum contacts exist between the defendant and the forum state so as to satisfy the requirements of Due Process.” *Kennedy*, 2019 U.S. Dist. LEXIS 104352, at *5-6 (citing *Madara v. Hall*, 916 F.2d 1510, 1513 (11th Cir. 1990)). The Court must first “determine whether the Florida long-arm statute provides a sufficient basis for personal jurisdiction[,]” and if the Court “deem[s] jurisdiction appropriate under Florida law, the Court must then ascertain whether ‘sufficient minimum contacts exist between the defendants and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment.’” *Kennedy*, 2019 U.S. Dist. LEXIS 104352, at *6 (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

### i.  Florida's Long-Arm Statute

Florida Statute Section 48.193(1)(a) provides:

A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

> 2. Committing a tortious act within this state.

> 3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

> 4. Contracting to insure a person, property, or risk located within this state at the time of contracting.

> 5. With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.

> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>> a. The defendant was engaged in solicitation or service activities within this state; or
>> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

> 8. With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.

> 9. Entering into a contract that complies with § 685.102.

Fla. Stat. §48.193(1)(a)(1)-(9) (2019).

"'Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe it as would the Florida Supreme Court.'" *Decanio*, 2013

14

U.S. Dist. LEXIS 202893, at *6 (quoting *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983); citing *Moore v. Lindsey,* 662 F.2d 354, 357-58 (5th Cir. 1981); *Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir. 1973)). The "Florida long-arm statute is to be strictly construed." *Id.* "[T]he Florida long-arm statute . . . requires more activities or contacts to confer personal jurisdiction than those demanded by the Constitution." *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 1988 U.S. App. LEXIS 19543, at *12 (11th Cir. Aug. 15, 1988) (citation omitted). "The plaintiff bears the burden of proving personal jurisdiction." *Decanio*, 2013 U.S. Dist. LEXIS 202893, at *6 (citing *Sculptchair, Inc.*, 94 F.3d at 627).

"Under Florida's long-arm statute, Fla. Stat. § 48.193, a non-resident defendant can be subject to personal jurisdiction in two ways." *Alibaba Grp. Holding Ltd.*, 2016 U.S. Dist. LEXIS 33228, at *6. "First, a Florida court can exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* (citing *Schulman v. Inst, for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015)). "Second, a Florida court can exercise specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of nine statutorily enumerated categories set forth in section 48.193(1)(a)." *Id.*

"Once a party has failed to meet the first prong of the personal jurisdiction analysis, the Court 'need not reach the issue of whether . . . the exercise of jurisdiction comports with due process.'" *Mar. Exec., LLC v. Larson Elecs, LLC*, No. 17-60323-CIV-GAYLES, 2018 U.S. Dist. LEXIS 97742, at *12 (S.D. Fla. June 11, 2018) (quoting *Maale v. Kirchgessner*, No. 08-80131-CIV-DIMITROULEAS, 2010 U.S. Dist. LEXIS 152444, at *21 n.9 (S.D. Fla. May 27, 2010), *aff'd sub nom. Maale v. Caicos Beach Club Charter, Ltd.*, 420 F. App'x 895 (11th Cir. 2011)). *See also PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010) ("Because the federal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand . . . we consider first whether Florida's long-arm statute provided the district court with personal jurisdiction over any of the defendants." (citing *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1306 (11th Cir. 2006))).

15

### ii.    Due Process Clause of the Fourteenth Amendment

The court applies a three-part due process test to determine whether a defendant has established sufficient minimum contacts to meet due process requirements, examining: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant's contacts represent a "purposeful availment of the privilege of conducting activities within the forum state," thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable, and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S. A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 1355 (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### b.    Charles Bradley must be dismissed from the suit for lack of personal jurisdiction.

As set forth in the affidavit attached hereto as Exhibit "A", BRADLEY has zero connections to the state of Florida:

- BRADLEY is an individual who resides in Kentucky and is a citizen of Kentucky.[2]
- BRADLEY is the President of the business, Shooters Connection, Inc. ("SHOOTERS"), a Kentucky corporation with a principal place of business in Kentucky.[3]
- BRADLEY has never resided in Florida.
- BRADLEY has never held any licenses in Florida.
- BRADLEY does not hold any certifications issued in Florida.
- BRADLEY has never participated in a proceeding for alimony, child support, or division of property in Florida.
- BRADLEY does not have any Florida phone number.
- BRADLEY does not have any real estate, bank accounts or any other assets in Florida.
- BRADLEY has never owned, used, possessed or held a mortgage or other lien on any real property within Florida.
- BRADLEY has never committed a tortious act within Florida.

---

[2] Plaintiffs do not dispute this fact. *See* [ECF No. 9-1 at ¶6].

[3] Plaintiffs do not dispute this fact. *See e.g.*, [ECF No 9-1 at ¶¶5, 289-290].

In sum, BRADLEY in no way has availed himself of Florida's privileges and protections. Thus, it would be unreasonable and improper to require BRADLEY to submit to the burdens of litigation in Florida.

Plaintiffs' complaint alleges BRADLEY is subject to personal jurisdiction in Florida because "[h]e committed a tortious act(s) within this State." *See* Ex. A at ¶11. However, there are no allegations in Plaintiff's complaint that any Florida resident accessed the allegedly defamatory publications by BRADLEY and/or SHOOTERS; therefore, Plaintiffs allegations fail to establish a "tortious act." *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010). Moreover, BRADLEY denies he committed any tortious acts at any time within Florida. *See* Ex. A at ¶11.

Pertinently, BRADLEY does not personally own the Shooters Connection, Inc. Facebook page where Plaintiffs allege defamatory statements were published. Rather, BRADLEY is President of Shooters Connection, Inc., and it is Shooters Connection, Inc. that owns the page. *See* Ex. A at ¶12. Plaintiffs must recognize that corporations can only act through people. Any statements published by Shooters Connection Inc. on its Facebook page which Plaintiffs claim to defame them—which BRADLEY and SHOOTERS expressly deny—while physically drafted and/or posted by BRADLEY on behalf of Shooters Connection, Inc., were not made by BRADLEY personally or in an individual capacity. *See* Ex. A at ¶14. This is evidenced by the fact that no at-issue postings were made by an individual "Charles Bradley", "Chuck Bradley", or the like. *See Two Worlds United v. Zylstra*, 46 So. 3d 1175 (Fla. 2d DCA 2010) (finding plaintiff failed to establish personal jurisdiction over the non-resident defendant who did not personally own the website or personally make any posts on the website relating to plaintiff). Rather, all postings by Shooters Connection, Inc. on its Facebook account are statements by the corporation itself. *See* Ex. A at ¶15. Additionally, any postings by Facebook accounts of "2011 Universe", "USPSA UNOFFICIAL", "CHIMPO", "James Taylor", "Mike Hoffer", "Bagger", "Team Doodie Project Uncensored" and "Double Alfalfa" were not made by BRADLEY, and BRADLEY does not have access to said Facebook accounts. *See* Ex. A at ¶¶18-19. For these reasons, the exhibits attached to Plaintiffs' complaint conflict with the allegations in Plaintiffs' complaint, specifically that BRADLEY committed a tortious act in Florida. *See Irvin*, 496 F. 3d at 1189 ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that exhibits control.").

17

Accordingly, the Court must dismiss Plaintiffs' complaint against BRADLEY as Plaintiffs cannot meet the initial burden of setting forth BRADLEY committed a tortious act within Florida or is otherwise subject to the Court's jurisdiction by means of Florida's long-arm statute. Moreover, BRADLEY has not engaged in any activity—yet alone substantial and not isolated activity—in Florida. Further, even if Plaintiffs could evidence BRADLEY is subject to personal jurisdiction under the Florida long-arm statute, BRADLEY has no contacts with Florida; therefore, the Court's exercise of personal jurisdiction over BRADLEY would offend traditional notions of fair play and substantial justice. Therefore, this Court should dismiss Plaintiffs' Complaint against BRADLEY.

**c. Michael Dame must be dismissed from the suit for lack of personal jurisdiction.**

As set forth in the affidavit attached hereto as Exhibit "B," DAME has zero connections to the state of Florida:

- DAME is an individual who resides in Kentucky and is a citizen of Kentucky.[4]
- DAME has never resided in Florida.
- DAME has never held any licenses in Florida.
- DAME does not hold any certifications issued in Florida.
- DAME has never participated in a proceeding for alimony, child support, or division of property in Florida.
- DAME does not have any Florida phone number.
- DAME does not have any real estate, bank accounts or any other assets in Florida.
- DAME has never owned, used, possessed or held a mortgage or other lien on any real property within Florida.
- DAME has never committed a tortious act within Florida.
- DAME is not an employee, agent, representative, or independent contractor of KKM Precision, Inc., Shooters Connection, Inc., Luke McIntire, or Charles Bradley.

In sum, DAME in no way has availed himself of Florida's privileges and protections. Thus, it would be unreasonable and improper to require DAME to submit to the burdens of litigation in Florida.

Plaintiffs' complaint alleges DAME is subject to personal jurisdiction in Florida because "[h]e committed a tortious act(s) within this State." However, there are no allegations in Plaintiff's complaint that any Florida resident accessed the allegedly defamatory publications by DAME; therefore, Plaintiffs allegations fail to establish a "tortious act." *See Internet Solutions Corp. v.*

---

[4] Plaintiffs do not dispute this fact. *See* [ECF No. 9-1 at ¶8].

*Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010). Moreover, DAME denies he committed any tortious acts at any time within Florida. *See* Ex. B at ¶11.

Accordingly, the Court must dismiss Plaintiffs' complaint against DAME as Plaintiffs cannot meet the initial burden of setting forth DAME committed a tortious act within Florida or is otherwise subject to the Court's jurisdiction by means of Florida's long-arm statute. Moreover, DAME has not engaged in any activity—yet alone substantial and not isolated activity—in Florida. Further, even if Plaintiffs could evidence DAME is subject to personal jurisdiction under the Florida long-arm statute, DAME has no contacts with Florida; therefore, the Court's exercise of personal jurisdiction over DAME would offend traditional notions of fair play and substantial justice. Therefore, this Court should dismiss Plaintiffs' Amended Complaint against DAME.

### d. Timothy Mekosh must be dismissed from the suit for lack of personal jurisdiction.

As set forth in the affidavit attached hereto as Exhibit "C," MEKOSH has zero connections to the state of Florida:

- MEKOSH is an individual who resides in Kentucky and is a citizen of Kentucky.[5]
- MEKOSH has never resided in Florida.
- MEKOSH has never held any licenses in Florida.
- MEKOSH does not hold any certifications issued in Florida.
- MEKOSH has never participated in a proceeding for alimony, child support, or division of property in Florida.
- MEKOSH does not have any Florida phone number.
- MEKOSH does not have any real estate, bank accounts or any other assets in Florida.
- MEKOSH has never owned, used, possessed or held a mortgage or other lien on any real property within Florida.
- MEKOSH has never committed a tortious act within Florida.
- MEKOSH is not an employee, agent, representative, or independent contractor of KKM Precision, Inc., Shooters Connection, Inc., Luke McIntire, or Charles Bradley.

In sum, MEKOSH in no way has availed himself of Florida's privileges and protections. Thus, it would be unreasonable and improper to require MEKOSH to submit to the burdens of litigation in Florida.

Plaintiffs' complaint alleges MEKOSH is subject to personal jurisdiction in Florida because "[h]e committed a tortious act(s) within this State." However, there are no allegations in Plaintiff's complaint that any Florida resident accessed the allegedly defamatory publications by MEKOSH; therefore, Plaintiffs allegations fail to establish a "tortious act." *See Internet Solutions*

---

[5] Plaintiffs do not dispute this fact. *See* [ECF No. 9-1 at ¶7].

*Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010). Moreover, MEKOSH denies he committed any tortious acts at any time within Florida. *See* Ex. C at ¶11.

Accordingly, the Court must dismiss Plaintiffs' complaint against MEKOSH as Plaintiffs cannot meet the initial burden of setting forth MEKOSH committed a tortious act within Florida or is otherwise subject to the Court's jurisdiction by means of Florida's long-arm statute. Moreover, MEKOSH has not engaged in any activity—yet alone substantial and not isolated activity—in Florida. Further, even if Plaintiffs could evidence MEKOSH is subject to personal jurisdiction under the Florida long-arm statute, MEKOSH has no contacts with Florida; therefore, the Court's exercise of personal jurisdiction over MEKOSH would offend traditional notions of fair play and substantial justice. Therefore, this Court should dismiss Plaintiffs' Amended Complaint against MEKOSH.

**WHEREFORE,** Defendants KKM PRECISION, INC., SHOOTERS CONNECTION, INC., CHARLES BRADLEY, TIMOTHY MEKOSH, and MICHAEL DAME respectfully request that this Court dismiss the Plaintiffs' First Amended Complaint [ECF No. 9-1], and grant such further relief as this Court deems just and proper.

Respectfully submitted by:

| | |
|---|---|
| */s/ Nicholas D. Freeman* | */s/ Kevin P. Robinson* |
| NICHOLAS D. FREEMAN, ESQ. | Kevin P. Robinson, Esquire |
| Florida Bar No. 118620 | Florida Bar No.: 0014650 |
| Nicholas.freeman@wilsonelser.com | krobinson@zkslawfirm.com |
| AMANDA QADRI, ESQ. | jwenhold@zkslawfirm.com |
| Florida Bar No. 1003108 | service@zkslawfirm.com |
| Amanda.Qadri@wilsonelser.com | ZIMMERMAN, KISER & SUTCLIFFE, P.A. |
| Wilson Elser Moskowitz Edelman & Dicker LLP | 315 E. Robinson St., Suite 600 (32801) |
| 111 North Orange Avenue, Suite 1200 | P.O. Box 3000 |
| Orlando, FL 32801 | Orlando, FL 32802 |
| (407) 203-7599 – Phone | Telephone: (407) 425-7010 |
| (407) 648-1376 – Facsimile | Facsimile: (407) 425-2747 |
| *Attorneys for Defendants, Shooters Connection, Inc. and Charles Bradley* | Counsel for Defendants KKM Precision, Inc., Timothy Mekosh, and Michael Dame |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically notices of Electronic Filing.

*/Nicholas D. Freeman* _____
NICHOLAS D. FREEMAN, ESQ.
Florida Bar No. 118620
Nicholas.freeman@wilsonelser.com
AMANDA QADRI, ESQ.
Florida Bar No. 1003108
Amanda.Qadri@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue, Suite 1200
Orlando, FL 32801
(407) 203-7599 –  Phone
(407) 648-1376 –  Facsimile
*Attorneys for Defendants, Shooters Connection, Inc.*
*and Charles Bradley*

## SERVICE LIST

LAW OFFICES OF FIATO
Richard J. Fiato
550 W. Merrill Street, Suite 200
Birmingham, MI 48009
Attorney for Plaintiffs
fiatolaw@gmail.com
rfiato@coniferinsurance.com
eyee@mmyelaw.com


ZIMMERMAN KISER SUTCLIFFE
Kevin P. Robinson
315 East Robinson Street, Suite 600
Orlando, FL 32801
Attorney for KKM, MEKOSH, DAME
krobinson@zkslawfirm.com
JWenhold@zkslawfirm.com
service@zkslawfirm.com

21

1301536v.1

COLE, SCOTT & KISSANE, P.A.
John A. Chiocca
Kir-Sheng Chen
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33401
Attorneys for BRADLEY and SHOOTERS
John.chiocca@csklegal.com
Kir-sheng.chen@csklegal.com
Stephanie.chiocca@csklegal.com
Susan.miller@csklegal.com

1301536v.1