UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA (Ft. Lauderdale)

CASE NO.: 0:20-cv-61469-RS

Akai Custom Guns, LLC, et al.,

    Plaintiffs,

vs.

KKM Precision, Inc., et al.,

    Defendants.

                                   /

**DEFENDANT KKM PRECISION, INC.'S RESPONSE TO MOTION TO COMPEL ACCURATE ANSWERS TO PLAINTIFFS' SECOND REQUESTS FOR ADMISSION, PLAINTIFF'S FIRST, SECOND, AND THIRD REQUESTS FOR PRODUCTION OR IN THE ALTERNATIVE DEEM MATTERS ADMITTED [DOC. 86]**

COMES NOW, Defendant, KKM Precision, Inc. ("KKM"), by and through the undersigned Counsel, and for its response to the Plaintiffs' Motion to Compel [Doc. 86] dated June 11, 2022, states:

1. On or about June 11, 2022, Plaintiffs filed a Motion to Compel [Doc. 86] relating to KKM's Answers to Second Requests for Admission, and Plaintiffs' First, Second, and Third Requests for Production. This Response will respond to the relevant Paragraph numbers from Plaintiffs' Motion [Doc. 86] by reference to the particular Paragraph being responded to.

2. As an initial statement, the Plaintiffs spend the bulk of their Motion attempting to argue disputed issues of fact that are meant to be proven at trial or through further discovery. Plaintiffs' Motion is, in actuality, a disguised motion for summary judgment, and yet it is based almost entirely upon unverified and disputed issues of fact and upon varying disputed interpretations of evidence. KKM objects to the Court's consideration of all unverified

[14236-1/9763023/1]                                      1

and otherwise un-authenticated and inadmissible evidence cited in the Plaintiffs' Motion. While the Plaintiffs may dispute certain discovery responses that KKM has asserted throughout the instant case, those disputes are no different than the differing interpretations given to evidence in any lawsuit. A disputed issue of fact, however, does not give rise to a motion to compel. KKM will address the specific, and yet unverified, allegations of the Plaintiff by reference to the relevant paragraph number from their Motion.

3. In Paragraph 7 of the Plaintiffs' Motion, they allege that Defendant KKM "has tampered with evidence in this matter by way of altering its testing protocol." *See* Motion to Compel at ¶ 7. Specifically, they allege that KKM has changed the term "416 R" to "416 Restricted." Plaintiffs fail to attach to their Motion any prior version of the referenced document using "416 R" instead of "416 Restricted," so the Motion at Paragraph 7 is itself deficient and lacks any proof whatsoever of the alleged alteration. Regardless, through further discovery the Plaintiffs would learn that the "tampering" that the Plaintiffs' argument arises from arose years ago because they base their claim on an initial draft or a document that was revised years ago as it was refined. The Plaintiffs' claims relate to a "testing protocol" that was created solely as a result of the Plaintiffs' claims (which no prior customer of KKM had ever asserted) and which went through more than one iteration. The allegation that KKM "has tampered with evidence" is counter-factual, and the Plaintiffs' Motion supplies no evidence to the contrary other than their bare assertion. In fact, the very document that the Plaintiffs' allegation of "tampering" is based upon uses both the phrase "416 Restricted," as well as the term "416R," which the Plaintiffs claim was removed from the document through "tampering."

4. More substantively, in Paragraph 7 the Plaintiffs argue that KKM's use of the phrase "416 Restricted" "is made up fictitious nonsense, and is inaccurate and disingenuous. . . ." *Id*. Plaintiffs' argument itself is disingenuous. The "*R*" in the phrase "416 R" when

[14236-1/9763023/1] 2

referencing the type of steel used to make KKM's gun barrels itself means "**R**estricted." "R" is not an abstract reference by KKM, it is a reference to the specific "restrictions" that KKM places on the steel that it orders to manufacture its gun barrels. In Paragraph 2 of KKM's Response to Plaintiffs' Second Request for Admissions, KKM states that the "barrels sold to Akai were made from steel bar stock that KKM ordered to be manufactured within its 416 Restricted specifications . . ." and then KKM goes on to specify the restrictions of the various chemical components within its barrel steel. *See* Exhibit 3 to Plaintiffs' Motion. Plaintiffs may not like, or even agree with, KKM's use of the term, but that does not make it sanctionable. Rather this is a disputed issue of fact to be adjudicated by the trier of fact.

5. In Paragraphs 8 and 9 of the Plaintiffs' Motion, they allege that Defendant KKM sent a text message to non-party Nathan Carter that the Plaintiffs suggest "proves" that KKM sold barrels made of Carpenter BQ5 steel prior to 2020. Plaintiffs claim that "KKM confirmed the use of BQ5 prior to 2020 and conveniently avoids addressing that barrels made of BQ5 steel were available for sale during this period. . . ." Once again, the Plaintiffs mistake a disputed issue of fact for a sanctionable discovery violation. Plaintiffs reference an unverified document attached to their First Amended Complaint as Exhibit "2." KKM maintains that it did not manufacture, sell, or distribute any consumer barrels from Carpenter BQ5 steel prior to 2020. Rather, the only Carpenter BQ5 barrels created by KKM prior to that time were non-consumer barrels specially ordered for testing by the United States Army Marksman Unit. At that time these barrels were not commercially available from KKM, either direct to consumer (such as Plaintiffs) or through distributors (such as Shooters Connection, Inc.). The referenced text message was sent because KKM believed that the recipient was a member of the United States military at the time, and KKM did not know whether he possessed a military grade barrel or a consumer barrel.

Plaintiffs have supplied no evidence to the contrary, because no such evidence exists. Plaintiffs' attempt to use unverified motion practice as a substitute for discovery is simply improper.

6. In Paragraph 10 of their Motion, the Plaintiffs reference an unverified text message sent from a non-party, John Vleiger. This text message says that there is a "99% chance [that a KKM barrel sold b Shooters Connection, Inc.] is 416R BQ5 (barrel quality 5). . . ." Plaintiffs argue that this non-verified text message from a non-party "confirmed the use and sale of BQ5, again prior to 2020." This text message is inadmissible in its unverified form and constitutes hearsay from a non-party who, presumably, does not know what type of steel that KKM-manufactured barrels were made of.

7. In Paragraph 11 of their Motion, the Plaintiffs reference yet another unverified exhibit to argue that KKM "confirmed the use and sale of BQ5 prior to 2020." Once again, KKM asserts that the only Carpenter BQ5 barrels created by KKM prior to that time were non-consumer barrels specially ordered for testing by the United States Army Marksman Unit. At that time these barrels were not commercially available from KKM, either direct to consumer or through distributors. It is accurate that at this time KKM manufactured Outukumpo 416 R barrels and Carpenter BQ5 barrels (which is simply Carpenter's proprietary name for its own "barrel quality" 416 steel, which comports with its customers' 416 R restrictions). Once again, the Plaintiffs confuse a disputed issue of fact with a sanctionable discovery violation.

8. In Paragraph 12 of their Motion, the Plaintiffs argue that KKM's document production shows steel purchases from Outokumpu from 2015 to present and from Carpenter for "No. 5 BQ" in 2020. Plaintiffs argue that "[n]owhere in any responsive discovery documents are '416R' purchases are [sic] shown, nor is there any '416 Restricted' as the latter is not a grade of steel that exists in reality. KKM respectfully disagrees with Plaintiffs' unverified

conclusion that "'416 Restricted' . . . is not a grade of steel that exists in reality." Instead, KKM yet again restates that the "R" in "416 R" steel referenced by the Plaintiffs means "Restricted." While the Plaintiffs may not accept or agree with this contention, it is undeniably a disputed issue of fact that the trier of fact will ultimately decide.

9. In Paragraph 13, the Plaintiffs allege that the Defendants response to Request for Admission No. 9 "should be stricken as untrue" because the Defendants have not produced a joint testing protocol. However, subsequent to the Defendants' willingness to jointly test the subject barrels, the Plaintiffs themselves unilaterally tested those barrels and, as of the date of this Response, have not produced those barrels for testing by Defendants, despite the Defendants having formally requested the barrels through discovery. Nothing about KKM's Response to Request for Admission No. 9 is untrue.

10. In Paragraph 14, the Plaintiffs rely upon the prior unverified and disputed allegations to argue that the KKM sold BQ5 barrels prior to 2020, yet, KKM did not manufacture, distribute, or sell any Carpenter BQ5 barrels prior to 2020. KKM reaffirms that prior to 2020 it manufactured and provided the United States Army Marksmanship Unit with Carpenter BQ5 barrels for testing, which were not publicly marketed, distributed, or sold.

11. Very simply, the Plaintiffs have mistaken routine disputes over fact with "evidence tampering" or lying. The Plaintiffs' unverified Motion proves nothing, and the Plaintiffs cannot shortcut the process of proving disputed facts through testimony, exhibits, and trial by merely asserting that their version of events is indisputable. It is not, and KKM does dispute their claims.

## MEMORANDUM OF LAW

I. **Plaintiffs' Motion is an Improper Attempt to Shortcut Discovery and Obtain Summary Judgment Based Upon Unverified Allegations on Disputed Issues.**

Plaintiffs' Memorandum of Law presents a hodgepodge of legal argument, most of which is not relevant to the substance of their Motion. Plaintiffs begin by citing to case law relating to the "relevance" of discovery (*see* Motion at pg. 7), yet their Motion does not spend any time arguing an objection to discovery requests based upon relevancy. Plaintiffs next cite case law relating to the time within which a party may respond to a request for admissions (*see* Motion at pg. 8) yet the Plaintiffs' Motion by both its style (relating to the Plaintiffs' Second Request for Admissions, which were responded to) and by its *ad damnum* clause (relating to the Plaintiffs' Second Request for Admissions, which were responded to) does not seek to deem admitted any Requests for Admission not responded to.[1]

Plaintiffs' Motion is nothing more than an attempt to shortcut the required process of discovery and proof at trial by claiming disputed issues of fact as having been admitted, when there are reasonable (and truthful) explanations as to why the Plaintiffs' arguments fail. Federal Rule of Civil Procedure 56(c)(2) is very clear that "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," and yet the Plaintiffs' entire Motion essentially asks this Court to accept as true their unverified (and thus inadmissible) interpretation of KKM's own interpretation of those same facts. That dispute – how certain words, phrases, or statements were intended to be interpreted – forms the very essence of the disputed issues that must be adjudicated at trial and not through summary disposition (particularly when the Plaintiffs do not move for summary judgment formally but instead seek a back-door summary adjudication through a "motion to compel" what the Plaintiffs deem, but KKM does not, to be "accurate" answers to discovery). Where a party has not "set forth such facts as would be admissible in evidence," a court may not grant summary judgment on a disguised

---

[1] Paragraph 7 of the Plaintiffs' Motion makes reference to a First Request for Admissions which is not addressed in the style or *ad damnum* clause of the Motion and which KKM will address by its own separate Motion.

[14236-1/9763023/1] 6

motion for summary judgment. *See, e.g., Wolford v. Budd Co.*, 149 F.R.D. 127, 132 (W.D. Va. 1993).

WHEREFORE, Defendant KKM Precision, Inc., respectfully requests that this Court deny the Plaintiff's Motion to Compel, and issue such further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via ECF to Richard J. Fiato, Esq., Law Offices of Fiato, 550 W. Merrill St., Ste. 200, Birmingham, MI 48009 (fiatolaw@gmail.com); Edmund S. Yee, Esq., McKelvie, McKelvie, Yee & Epacs, P.C. 280 W. Maple Rd., Ste. 220, Birmingham, MI 48009 (eyee@mmyelaw.com); John A. Chiocca, Esq., Cole, Scott & Kissane, P.A., 222 Lakeview Ave., Ste. 120, West Palm Beach, FL 33401 (john.chiocca@csklegal.com; stephanie.chiocca@csklegal.com); Nicholas D. Freeman, Esquire and John Y. Benford, Esquire, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 111 N. Orange Ave., Ste. 1200, Orlando, FL 32801 (nicholas.freeman@wilsonelser.com; John.bedford@wilsonelser.com), this 27th day of June, 2022.

    */s/ Kevin Robinson*
Kevin P. Robinson, Esquire
Florida Bar No.: 0014650
ZIMMERMAN, KISER & SUTCLIFFE, P.A.
315 E. Robinson St., Suite 600 (32801)
P.O. Box 3000
Orlando, FL 32802
Telephone: (407) 425-7010
Facsimile: (407) 425-2747
Counsel for Defendant, KKM Precision, Inc.
krobinson@zkslawfirm.com
jwenhold@zkslawfirm.com
service@zkslawfirm.com

KPR/kpr