UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-CV-61469-SMITH/VALLE

AKAI CUSTOM GUNS, LLC, *et al.*,

      Plaintiffs,

v.

KKM PRECISION, INC., *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court upon Defendant KKM Precision, Inc.'s ("KKM") Renewed Verified Motion for Attorneys' Fees and Non-Taxable Expenses (ECF No. 337) (the "Motion").[1]  United States District Judge Rodney Smith has referred all motions for attorneys' fees and costs to the undersigned for appropriate resolution.  (ECF No. 36 at 2).

Having reviewed the Motion, Plaintiffs' Response (ECF No. 345), KKM's Reply (ECF No. 346), KKM's Notice of Previously Awarded Fees and Costs (ECF No. 295), and being otherwise fully advised on the matter, the undersigned recommends that the Motion be **GRANTED IN PART AND DENIED IN PART** as set forth below.  More specifically, KKM should be awarded $428,781.46 in attorneys' fees and $65,573.35 in costs.

---

[1] KKM's initial motion for fees and costs (ECF No. 281) was denied without prejudice, pending the District Judge's ruling on Plaintiffs Akai Custom Gun, LLC ("Akai") and Shay Horowitz's ("Horowitz") (together, "Plaintiffs") Rule 60 Motion for Relief from Judgment (ECF No. 297). On January 28, 2025, the District Judge denied Plaintiffs' Rule 60 Motion.  (ECF No. 335).  The instant Motion followed.

## I.     **BACKGROUND**

This case involves a dispute between Plaintiffs, a manufacturer and retailer of custom pistols (Akai) and its sole proprietor (Horowitz), against KKM (a gun parts manufacturer) and co-Defendant Shooters Connection, Inc. ("SCI") (a parts retailer) regarding the quality/strength of the steel used in certain pistol barrels manufactured by KKM, which Plaintiffs purchased both directly from KKM and through SCI.  (ECF No. 208 at 2-3).  The factual background and procedural history of the case is set forth in the District Judge's Order on Cross-Motions for Summary Judgment (the "Summary Judgment Order"), which is incorporated by reference.  *See* (ECF No. 208); *see generally* (ECF No. 1-1 at 111-534) (the Amended Complaint) ("Am. Compl.").

In July 2020, Plaintiffs filed a 29-count Amended Complaint against KKM and SCI.  *See generally* Am. Compl.  As to KKM, the Amended Complaint alleged: (i) misleading advertising (Count 1) (Akai against KKM); (ii) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 3) (Akai against KKM and SCI); (iii) fraudulent inducement (Count 4) (Akai against KKM and SCI);[2] (iv) strict liability (Count 5) (Akai and Horowitz against KKM and SCI);[3] (v) breach of express warranties (Count 6) (Akai against KKM and SCI); (vi) breach of implied warranty of merchantability (Count 7) (Akai against KKM and SCI); (vii) breach of implied warranty of fitness for a particular purpose (Count 8) (Akai against KKM and SCI); (viii) revocation of acceptance (Count 9) (Akai against KKM and SCI); (ix) defamation (Count 10) (Akai and Horowitz against KKM); (x) defamation per se (Count 11) (Akai and Horowitz

---

[2] Although Counts 1, 3, and 4 in the Amended Complaint list Akai and Horowitz as Plaintiffs on these claims, the parties agree that these counts relate solely to Akai.  (ECF Nos. 337 at 5, 345 at 2); *see* (ECF No. 113-2 at 146-49) (8/17/22 Horowitz deposition); *see also* (ECF No. 56 at 17) (District Judge's Order dismissing Horowitz from the fraudulent inducement claim for lack of standing but allowing Akai to proceed with the claim).

[3] The Court dismissed with prejudice Count 5 (alleging strict liability).  *See* (ECF No. 56 at 17-18); *see also* (ECF Nos. 46, 49, 50).

against KKM); (xi) defamation by implication (Count 12) (Akai and Horowitz against KKM); (xii) commercial disparagement (Count 22) (Akai against KKM); and (xiii) civil conspiracy to commit commercial disparagement (Count 26) (Akai against KMM).  (ECF No. 1-1 at 134-37, 143-51, 151-74, 340-45, 401-08).

On December 23, 2022, KKM served Akai and Horowitz with Proposals for Settlement, pursuant to Fla. Stat. § 768.79.  *See* (ECF No. 337 at 24-29).  In the Proposals, KKM offered to pay each Plaintiff $25,000 in settlement of all claims.  *Id.*  Plaintiffs, however, did not accept the offer and proceeded with the litigation.  Thereafter, on December 6, 2023, the Court granted partial summary judgment in favor of KKM on several counts, leaving for trial only the four claims alleged in Count 1 (misleading advertising), Count 3 (FDUTPA), Count 4 (fraudulent inducement), and Count 12 (defamation by implication).  (ECF No. 208 at 10-11, 14-15, 21-25).  On December 22, 2023, after a ten-day trial, the jury returned a verdict in favor of KKM on all four counts.  *See* (ECF No. 236 at 1-10).  In January 2024, the Court entered final judgment on the verdict, finding that KKM was "the prevailing party for all claims asserted against it by Plaintiffs."  (ECF No. 244 at 2).  Subsequently, Plaintiffs filed their Rule 60 Motion for Relief from Judgment, which the Court denied.  *See* (ECF Nos. 297, 335).  The instant Motion followed.  *See generally* (ECF No. 337).

## II.   THE MOTION FOR FEES AND NONTAXABLE COSTS

### A.   KKM's Motion

KKM seeks recovery of $428,781.46 in fees and $78,068.35 in nontaxable costs against Akai and Horowitz for all claims.[4]  *See* (ECF Nos. 337 at 17, 18, 20, 346 at 5); *see also* (ECF

---

[4] Although in the Motion, KKM initially requests $441,880.50 in fees, KKM concedes in its Reply that a reduction is appropriate and reduced its fees to $428,781.46 ($271,051.50 + $157,729.96). *Compare* (ECF No. 337 at 17, 20), *with* (ECF No. 346 at 5).  The undersigned accepts KKM's

No. 349) (Plaintiffs' and KKM's Notice of Satisfaction as to taxable costs); (ECF No. 354) (Plaintiffs' and SCI's Stipulation of Dismissal with prejudice, with agreement to bear their own fees and costs incurred in this action).  KKM asserts entitlement to fees on several grounds.[5]  First, KKM argues that it is entitled to statutory fees based on its Proposals for Settlement, pursuant to Fla. Stat. § 768.79.[6]  (ECF No. 337 at 2, 24-29).  Second, KKM seeks fees as the prevailing party on Count 1 (misleading advertising), pursuant to the fee provision in Fla. Stat. § 817.41(6).[7]  *Id.* at 3-5.  Relatedly, KKM argues that "the fees and costs incurred in defending Count [1] are inextricably intertwined with the fees and costs incurred in defending the other claims asserted" against KKM so that it is "entitled to [an] award of *all of its fees and costs*" under § 817.41.  *Id.* at 2 (emphasis added).  Lastly, KKM argues that it is entitled to a discretionary award of fees on

---

reduced fee amount as the relevant request.

[5] The Motion divides the requested fees and costs into three litigation periods: (i) the period from the filing of the initial complaint to the serving of the Proposals for Settlement (April 30, 2020 to December 22, 2023); (ii) the period within the scope of the Proposals for Settlement, from the date of service of the Proposals through the jury's verdict (December 23, 2022 to December 31, 2023); and (iii) the period related to Plaintiffs' Rule 60 post-judgment motion (January 1, 2024 to December 31, 2024).  (ECF No. 337 at 2-3, 10, 11, 16).  Because the undersigned finds that fees should be awarded for the entire litigation period (as the claims are all inextricably intertwined), KKM's suggested time periods are irrelevant to the undersigned's determination.

[6] Pursuant to § 768.79(1), "[i]n any civil action for damages . . . if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability."  Plaintiffs concede that KKM is entitled to recover its fees for the period covered by the Proposals for Settlement, subject to the fees being apportioned between Akai and Horowitz based on their respective claims.  (ECF Nos. 337 at 4-5 n.4, 345 at 2, 5).  Accordingly, and without further discussion, the undersigned finds that KKM is entitled to recover all its reasonable attorneys' fees and costs incurred from December 23, 2022 (the date the Proposals were served) to December 31, 2023 (through the jury's verdict).  (ECF No. 337 at 4, 10).

[7] Fla. Stat. § 817.41(6) provides that "[a]ny person prevailing in a civil action of this section shall be awarded costs, including reasonable attorney's fees . . . .  This provision is in addition to any other remedies prescribed by law."

Count 3 (FDUTPA), pursuant to Fla. Stat. § 505.2105[8] and the factors set forth in *Humane Society of Broward County, Inc. v. Florida Humane Society*, 951 So. 2d 966, 968 (Fla. 4th DCA 2007) (known as the *Humane Society* factors).  (ECF No. 337 at 5-8).

### B.  Plaintiff's Response

In response, Plaintiffs primarily challenge the allocation of fees and costs between the two Plaintiffs.  More specifically, Plaintiffs argue that Horowitz should not be held liable for fees and nontaxable costs attributable to counts pursued solely by Akai (and vice versa).  *See* (ECF No. 345 at 1-2).  For example, Horowitz argues that he alleged only Counts 10, 11, and 12 (defamation counts) against KKM, none of which have statutory fee provisions authorizing an award of fees. *Id.* at 2.  Additionally, Horowitz argues that: (i) because he did not bring Count 1 (misleading advertising) or Count 3 (FDUTPA), he is statutorily not liable for attorneys' fees and nontaxable costs related to these counts or any other counts that KKM asserts are "inextricably intertwined" with Counts 1 and 3; and (ii) fees and costs within the scope of the Proposals for Settlement, although recoverable, should similarly be allocated by counts between the two Plaintiffs.  *Id*. Lastly, Plaintiffs argue that although an award of fees under FDUTPA is discretionary, fees are unwarranted upon application of the *Humane Society* factors.[9]  *Id.* at 10-15.

---

[8] Fla. Stat. § 505.2105 provides that "[i]n any civil action resulting from an act or practice involving a violation of this part, . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."

[9] In their Response, Plaintiffs argue that the Court should deny the Motion and/or award sanctions to Plaintiffs based on KKM's purported: (i) bad faith litigation conduct; and (ii) failure to serve Plaintiffs with a complete draft of the Motion prior to filing the Motion, in violation of Local Rule 7.3.  (ECF No. 345 at 16, 18-20); *see also* (ECF No. 346 at 7-10) (KKM's response to these arguments).  These arguments are unpersuasive and Plaintiffs' request for sanctions should be denied.  First, the Court previously considered and denied Plaintiffs' requests for monetary sanctions.  *See* (ECF Nos. 163, 174).  In addition, Plaintiffs were not prejudiced by KKM's failure to attach attorney Barnett's Supplemental Affidavit to the draft Motion.  *See Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*, No. 17-CV-62013, 2019 WL 3412155, at *2 n.4 (S.D. Fla. May

## III.   ENTITLEMENT TO ATTORNEYS' FEES AND NONTAXABLE COSTS

### A.  General Rule

Under the "American Rule," prevailing litigants are generally not entitled to an award of attorneys' fees, unless provided for by statute or contract.  *See, e.g.*, *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract); *Hampton's Est. v. Fairchild-Fla. Const. Co*., 341 So. 2d 759, 761 (Fla. 1976) (same).  Moreover, the "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).  Here, because KKM is the prevailing party on summary judgment and at trial, determination of KKM's entitlement to fees and nontaxable costs depends on: (i) the nature of the claims, including the statutory basis and/or whether the claims are inextricably intertwined; (ii) the relevant litigation periods within the scope of the Proposals for Settlement; (iii) the reasonableness of KKM's claimed fees; and (iv) whether fees should be allocated between the individual Plaintiff Horowitz and the corporate Plaintiff Akai.

For the reasons discussed below, the undersigned finds that KKM is entitled to its reasonable fees and nontaxable costs on Counts 1 (misleading advertising) and 3 (FDUTPA) from the filing of the Amended Complaint through the Court's denial of Plaintiffs' Rule 60 post-

---

20, 2019), *report and recommendation adopted*, 2019 WL 3408888 (S.D. Fla. June 4, 2019) (finding defendant's failure to provide plaintiffs a draft of a fee motion did not preclude review of the motion on its merits "because it is within the court's discretion whether to require strict compliance with Local Rule 7.3"); *Alexsam, Inc. v. WildCard Sys., Inc.*, No. 15-CV-61736, 2019 WL 2245420, at *4 n.5 (S.D. Fla. Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 1010241 (S.D. Fla. Mar. 4, 2019) (considering motion for fees on its merits where plaintiff failed to show prejudice from defendants' limited noncompliance with Local Rule 7.3).

judgment motion, i.e., for the entire litigation period.[10]  The undersigned also finds that the remaining claims against KKM—fraudulent inducement (Count 4), breach of warranties (Counts 6-9), defamation (Counts 10-12), and commercial disparagement (Counts 22 and 26)—are inextricably intertwined with the claims in Counts 1 and 3, entitling KKM to an award of fees and nontaxable costs on all claims.  Each basis for entitlement is addressed below.

**B. KKM is Entitled to Fees under Counts 1 (Misleading Advertising, Fla. Stat. § 817.41) and 3 (FDUTPA, Fla. Stat. § 505.2105)**

*1. Count 1 (Misleading Advertising, Fla. Stat. § 817.41)*

As to Count 1 (misleading advertising), the parties agree that KKM is entitled to recover its fees and nontaxable costs against Akai pursuant to Fla. Stat. § 817.41.  (ECF No. 337 at 2, 5); *see also* (ECF No. 345 at 4) (Akai's concession that "KKM is entitled to recover its reasonable attorney's fees for prevailing under Count 1").  Because § 817.41 contains a mandatory fee provision awarding fees and nontaxable costs to the prevailing party, the undersigned finds that KKM is entitled to recover its fees and nontaxable costs on Count 1 from Akai.  KKM's entitlement to fees and costs from Horowitz is addressed below.  *See* Sections (III)(C), (IV).

*2. Count 3 (FDUTPA, Fla. Stat. § 505.2105)*

As to Count 3, the undersigned finds that KKM is entitled to recover its reasonable fees and costs against Akai for prevailing on Count 3 (FDUTPA).  (ECF No. 337 at 5-8).  FDUTPA allows for the Court's discretionary award of reasonable attorneys' fees and nontaxable costs to the prevailing party, upon consideration of the *Humane Society* factors.[11]  *Temurian v. Piccolo,*

---

[10] *See* Footnote 5, supra, for further explanation.

[11] The non-exhaustive *Humane Society* factors include: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions, including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not in subjective bad faith but was frivolous, unreasonable,

No. 18-CV-62737, 2021 WL 1520588, at *5 (S.D. Fla. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1121003 (S.D. Fla. Mar. 24, 2021) (citing *Humane Soc.*, 951 So. 2d at 971-72); *see also Sodikart*, 2014 WL 6968073, at *3-6 (finding *Humane Society* factors weighed in favor of fee award to prevailing defendant). On balance, the undersigned finds that Factors 1, 2, 3, 4, 5, and 7 weigh in favor of an award of fees and costs under FDUTPA.

### a. Factor 1: Scope and History of the Litigation

Relevant to the first factor, KKM spent considerable time, effort, and resources to defend against the FDUTPA claim from the inception of the litigation through trial. During the more than three-year litigation, the FDUTPA claim was subject to extensive discovery, motion practice, and survived a motion to dismiss and motion for summary judgment. *See* (ECF No. 208 at 7, 13-15). Ultimately, the jury found in favor of KKM. (ECF No. 236 at 3) (Question No. 10). Accordingly, this factor weighs in favor of awarding fees and nontaxable costs to KKM.

### b. Factor 2: Ability to Satisfy an Award of Fees

Generally, there is no presumption that a party can pay a fee award. *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2021 WL 2269822, at*7 (S.D. Fla. Apr. 30, 2021), *report and recommendation adopted*, 2021 WL 2024424 (S.D. Fla. May 21, 2021) (citation omitted). Nonetheless, by "invoking FDUTPA and seeking redress under its remedial provisions," Akai "exposed [itself] to both the benefits and the possible consequences of that act's provisions." *Id.* (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 369 (Fla. 2013)). Here, other than cursory statements that it is a small family-owned business with limited financial

---

groundless; (vi) whether the defense raised a defense mainly to frustrate or stall; and (vii) whether the claim brought was to resolve a significant legal question under FDUTPA law. *Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14-CV-22461, 2014 WL 6968073, at *3 (S.D. Fla. Dec. 9, 2014) (citing *Humane Soc.*, 951 So. 2d at 971-72).

resources and did not make a profit during the first seven years of operation, (ECF No. 345 at 11), Akai does not support its claim of financial hardship.  Conversely, KKM asserts that Plaintiffs recently obtained a $500,000 judgment against SCI, which is sufficient to cover most of the claimed fees and costs.  (ECF No. 346 at 6).  Accordingly, this factor weighs in favor of awarding fees and costs.

### c.  Factor 3: Deterrence

Here, where both parties are sophisticated business entities, the undersigned finds that an award of fees would not have "a chilling effect on consumer plaintiffs bringing suit under FDUTPA."  *Humane Soc.*, 951 So. 2d at 971; *see AMG Trade & Distribution, LLC v. Nissan N. Am., Inc.*, No. 18-CV-60062, 2021 WL 1146607, at *4 (S.D. Fla. Feb. 26, 2021), *report and recommendation adopted*, 2021 WL 1146352 (S.D. Fla. Mar. 25, 2021) ("While it is important to minimize frivolous lawsuits, it is equally important not to deter plaintiffs from filing meritorious FDUTPA claims."); *cf. Temurian*, 2021 WL 1520588, at *7 (finding Factor 3 weighed in favor of awarding fees because "a fee award would deter Point Conversions (and others like it) from bringing frivolous claims in an attempt to circumvent patent law").  Accordingly, this factor weighs in favor of a fee award.

### d.  Factors 4 and 5: Merits of Position/Groundless or Unreasonable

Akai's FDUTPA claim survived KKM's motion to dismiss and motion for summary judgment.  Thus, it cannot be said that Akai's claim was initially brought in bad faith or was frivolous.  KKM nonetheless argues that Akai's decision to continue to prosecute the FDUTPA claim after discovery revealed that "at all relevant times[,] KKM was only manufacturing pistol barrels out of the Outokumpu steel" makes Akai's continuation of the FDUTPA claim

unreasonable or frivolous.[12]  (ECF No. 337 at 7-8).  This argument weighs in favor of an award of fees and nontaxable costs.  *See, e.g.*, *Covington v. Arizona Beverage Co.*, 08-CV-21894, 2011 WL 11796700, at * 4 (S.D. Fla. Feb. 15, 2011), *report and recommendation adopted in part*, 2011 WL 11796786 (S.D. Fla. Aug. 25, 2011) (finding Factor 4 weighed in favor of fee award where it was plaintiff's responsibility to voluntarily dismiss the action once it became evident during discovery that he could not proceed with the FDUTPA claim).

        *e.  Factors 6 and 7: Defense to Frustrate or Stall/Claim Brought to Resolve Significant Legal Question*

As to the sixth factor, KKM prevailed on all its defenses, so this factor is inapplicable.  *See Sodikart*, 2014 WL 6968073 at *5 (finding Factor 6 "ha[d] no bearing on th[e] case, as [d]efendant was the prevailing party, not the losing party").  The seventh factor, however, weighs in KKM's favor, as Akai's FDUTPA claim was not complex and did not look to resolve a significant legal question or novel issue.  *See Tropical Paradise Resorts,* 2021 WL 2269822, at*8 (finding Factor 7 weighed in favor of a fee award where "the FDUTPA counterclaims cannot be said to have been brought to resolve a significant legal question or novel issue"); *Chastain v. N.S.S. Acquisition Corp.,* No. 08-CV-81260, 2010 WL 5463859, at *2 (S.D. Fla. Dec. 29, 2010) (finding award of fees unwarranted where "plaintiff's claim was not brought to resolve a significant legal question under FDUTPA law").

---

[12] According to KKM, "[t]he thrust of Akai's contention was that KKM attempted to deceive the purchasing public by manufacturing pistol barrels out of two different types of steel, one of which Akai claimed was a 'softer' grade of steel [i.e., Carpenter Project 70+ steel] . . . and made available by KKM through third-party distributors, such as SCI; the second was a harder grade of steel [i.e., the Outokumpu steel] that Akai claims that KKM sold exclusively through its direct website." (ECF No. 337 at 7).

### C.  Counts 1 and 3 are "Inextricably Intertwined" with All Other Claims Against KKM (Counts 4, 6-9, 10-12, 22, and 26)

Having determined that KKM is entitled to fees for the claims alleged in Counts 1 and 3, the Court must next consider whether the remaining claims are "inextricably intertwined" with Counts 1 and 3.  According to KKM, "[a]ll the issues in this litigation are inextricably intertwined with Count 1 (misleading advertising) and Count 3 (FDUTPA) because they involve "almost identical factual issues" centering "primarily upon whether the KKM barrels were defective." (ECF No. 337 at 14).  Thus, KKM argues that it should recover all fees and nontaxable costs for all claims asserted against it by both Plaintiffs.  *Id*. at 14-16.  Additionally, KKM argues that its legal defenses "to the misleading advertising claim [Count 1] were substantively identical to its defenses to the FDUTPA claim [Count 3] and defamation claims [Counts 10-12]."  (ECF No. 346 at 2).  KKM further asserts that it defended the FDUTPA claim (Count 3) and defamation claims (Counts 10-12) "using the same arguments," and that KKM "could not have defended Plaintiffs' FDUTPA or defamation claims without proving the exact same elements that KKM relied upon in defense of the misleading advertising claim" in Count 1.  *Id.* at 3 (footnote omitted).

When a party prevails on a claim on which it is entitled to an award of attorney's fees and also prevails on another claim for which there is no entitlement to fees, the prevailing party is entitled to recover attorney's fees for both claims when the claims are so intertwined that reasonable apportionment of the attorney's time is impractical.  *Onemata Corp. v. Rahman*, No. 20-CV-62002, 2023 WL 6534501, at *6 (S.D. Fla. Aug. 23, 2023), *report and recommendation adopted*, 2023 WL 5992139 (S.D. Fla. Sept. 15, 2023) (citation omitted); *see also Pro. Plaza Condo. Ass'n, Inc. v. Landmark Infrastructure Holding Co., LLC*, No. 20-CV-20707, 2022 WL 2819667, at *9 (S.D. Fla. June 14, 2022), *report and recommendation adopted*, 2022 WL 2817879 (S.D. Fla. July 19, 2022) ("When facts supporting all causes of action are so

intertwined that apportionment is not feasible, the court may award the prevailing party all attorney's fees.").  Moreover, where a particular claim is subject to a statutory fee entitlement provision but one or more related claims are not, "time spent marshaling the facts" of the related claims is compensable because it "likely would have been spent defending any one or all of the counts." *Caplan v. 1616 E. Sunrise Motors, Inc*., 522 So. 2d 920, 922 (Fla. 3d DCA 1988).  Lastly, when a party seeking fees establishes that the claims involve a common core of facts and are based on related legal theories, all reasonable fees may be awarded, unless the opposing party can show that the requesting attorneys spent separate and distinct time working on counts as to which attorney's fees are not authorized.  *Onemata Corp.*, 2023 WL 6534501, at *6 (citing *Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *4 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted*, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020); *and Filippova v. Mogilevsky*, No. 18-CV-80044, 2019 WL 1216150, at *6 (S.D. Fla. Feb. 14, 2019), *report and recommendation adopted*, 2019 WL 1216205 (S.D. Fla. Mar. 7, 2019)).

Against this legal backdrop, the undersigned finds that KKM has met its burden of showing that all the claims against it share a common core of facts and related legal theories and are inextricably intertwined, so that allocation between claims is not feasible.  *See Kipu Sys. LLC v. Zencharts, LLC*, No. 17-CV-24733, 2021 WL 1891710, at *13 (S.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 17-CV-24733, 2021 WL 4505527 (S.D. Fla. Sept. 30, 2021) (finding claims inextricably intertwined where "all the claims [were] based on a core set of facts" and related legal theories); *Waverly at Las Olas Condo. Ass'n, Inc. v. Waverly Las Olas, LLC*, 88 So. 3d 386, 388 (Fla. 4th DCA 2012) (affirming award of fees for inextricably intertwined claims based on "the same core set of facts" and alternative, but related, legal theories).  Here, the allegations in Count 1 (misleading advertising) and Count 3 (FDUTPA) involve interrelated

factual and legal issues.  The Amended Complaint generally alleges that KKM falsely advertised the barrels it sold to Plaintiffs as 416R stainless steel, when in fact the barrels were made of a softer and different type of steel, and concealed this from Plaintiffs.  *See* Am. Compl. ¶¶ 34, 62, 64.  The claims against KKM focused on whether the KKM barrels were defective, including whether they were made of 416R steel or some softer type of steel.  *See* Am. Compl. ¶¶ 106-19, 155-59, 162-63, 171-73, 194, 196-97, 201-03, 210-12, 216, 228-35, 238, 245-52, 255, 264-71, 274, 276, 752-60, 762, 925, 928-36, 938.  Thus, KKM's defense of the integrity of its barrels was integral to every claim against KMM, including the fraudulent inducement (Count 4), warranty (Counts 6-9), defamation (Counts 10-12), and commercial disparagement claims (Counts 22, 26).  *See id.*

The undersigned's conclusion that all claims are inextricably intertwined is further supported by the District Judge's Summary Judgment Order.  In the Summary Judgment Order, the District Judge noted that summary judgment was inappropriate as to Count 1 (misleading advertising) because "a genuine and material dispute exists over the composition and hardness of the gun barrels."  (ECF No. 208 at 10).  The District Judge then described Counts 3 (FDUTPA) and 4 (fraudulent inducement) as involving the same factual questions as in Count 1 (misleading advertising).  *Id.* at 9.  As to Count 3, the District Judge further stated, "Plaintiffs premise their FDUTPA claim against KKM on the same allegations supporting their misleading advertising claim" in Count 1, adding that "whether KKM engaged in misleading advertising involves disputed questions of fact that would necessarily impact the determination of KKM's liability" in Count 3.  *Id.* at 14-15.  Similarly, the District Judge noted that Plaintiffs' warranty claims (Counts 6-9) stem from Plaintiffs' allegation that Defendants breached various express and implied warranties in selling the allegedly defective gun barrels.  *Id.* at 16.

Moreover, the defamation (Counts 10-12) and commercial disparagement (Counts 22 and 26) claims stemmed from KKM's Open Letter, in which KKM attempted to rebut Plaintiffs' allegations that KKM's barrels were soft or defective.  *See* Am. Compl. ¶¶ 228-35, 245-52, 264-71, 752-59, 928-35.  KKM defended these claims by proving that it did not manufacture the barrels using two different grades of steel or using steel that it believed was softer than 42RC, relying on the same evidence and legal theories it used to defend against Counts 1 and 2.  Lastly, Plaintiffs' alleged damages against KKM were also inextricably intertwined, asserting the same lost profits, costs of repair, and consequential or incidental damages on all claims.  *See* Am. Compl. at 137, 146, 148, 154-57, 162, 168, 174, 345, 408 (similar "Wherefore" clauses in Counts 1, 3, 4, 6-9, 10-12, 22, 26).

For these reasons, the undersigned finds that KKM is entitled to recover its fees related to the misleading advertising claims (Counts 1, 3, and 4) and all other claims (Counts 6-9, 10-12, 22, and 26), as they are all based on the same core facts and related legal theories, and are therefore inextricably intertwined.  *See, e.g.*, *Onemata Corp.*, 2023 WL 6534501, at *7; *see also Kosterlitz v. S/V Knotta KLU*, No. 18-CV-482-FtM-PAM-MRM, 2020 WL 7039912 (M.D. Fla. Nov. 3, 2020), *aff'd*, 848 Fed. App'x. 886 (11th Cir. 2021) (quoting *Anglia Jacs & Co., Inc. v. Dubin*, 830 So. 2d 169, 172 (Fla. 4th DCA 2002) ("[U]nder Florida law a claim is inextricably intertwined with another when 'a determination of the issues in one action would necessarily be dispositive of the issues raised in the other.'")).

## IV.   ALLOCATION BETWEEN PLAINTIFFS

The undersigned next addresses Plaintiffs' argument that any fees and costs awarded should be allocated between Plaintiffs based on the respective claims brought by each. (ECF No. 345 at 1-2).  In this regard, district courts have broad discretion in determining the fee award, apportioning the fee award, and allocating liability.  *Kipu Sys. LLC v. Zencharts LLC*, No.

14

17-CV-24733, 2021 WL 1895881, at *8 (S.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 4479451 (S.D. Fla. Sept. 30, 2021) (citing *United States v. Patrol Servs., Inc.*, 202 F. App'x 357, 362 (11th Cir. 2006)).  In so doing, the goal is "to achieve the most fair and sensible solution as possible."  *Patrol Servs.*, 202 F. App'x at 362 (citing *Council for Periodical Distrib. Ass'ns v. Evans*, 827 F.2d 1483, 1488 (11th Cir.1987)).

Because there is no single preferred method for achieving a fair and sensible allocation, courts have taken various approaches, including, for example: (i) finding joint and several liability between the parties; (ii) apportioning fees in accordance with each party's relative degree of culpability; (iii) apportioning fees in the same proportions as the jury assessed damages; (iv) apportioning fees based on the amount of time spent by a plaintiff in preparing the case against each defendant; and (v) apportioning fees by claims or defenses that are specific to a particular defendant.  *Id.* (citing *Evans*, 827 F.2d at 1487-88); *Kipu*, 2021 WL 1895881, at *8 (citing *Booher v. Marion Cty.*, No. 07-CV-282-OC-10GRJ, 2010 WL 11623534, at *10 (M.D. Fla. Sept. 14, 2010)); *see also Centeno v. Santos Furniture Custom Design, Inc.*, No. 09-CV-23024, 2012 WL 13008328, at *1 (S.D. Fla. June 4, 2012) (apportioning fees in accord with parties' relative liability under jury verdict); *State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, No. 15-CV-21215, 2017 WL 3835345, at *4-5 (S.D. Fla. July 7, 2017), *report and recommendation adopted*, 2017 WL 3724165 (S.D. Fla. Aug. 29, 2017) (reducing a fee award based on the party's relative culpability).  If necessary, the district court may combine two or more methods depending on the facts and nature of the case.  *Patrol Servs.*, 202 F. App'x at 362 (citing *Evans*, 827 F.2d at 1488).

Where, however, plaintiffs have largely operated as a "single cohesive unit and there is no compelling reason to choose any other method to apportion fees and costs [t]hen the default rule is that joint and several liability apply where there is more than one non-prevailing party."  *Fernau*

*v. Enchante Beauty Products, Inc.*, No. 18-CV-20866, 2021 WL 1923285, at *1 (S.D. Fla. May 13, 2021) (quoting *Kipu*, 2021 WL 1895881, at *9).  Indeed, it is the non-prevailing party's burden to "introduce evidence justifying apportionment and persuade the Court to do that," rather than impose fees jointly and severally.  *Id.* (quoting *Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 09-CV-298-J-34PDB, 2014 WL 12652475, at *7 (M.D. Fla. April 3, 2014)).  Equities favoring a finding of joint and several liability include: (i) joint representation of the non-prevailing parties; (ii) common theories of liability or defense among the non-prevailing parties; (iii) equal cost attributions; and (iv) the unfairness of requiring the prevailing party to collect costs from several sources and bear the risk of non-payment from one or more of them.  *Id.*  On the other hand, equities favoring apportionment include: (i) whether the court had consolidated cases on its own initiative; (ii) whether costs can be easily split; and (iii) and unequal cost attribution.  *Id.*

Here, the undersigned finds that a balance of the equities weigh in favor of assessing KKM's fees and costs against both Plaintiffs, jointly and severally.  Given that the undersigned previously found all claims against KKM were inextricably intertwined, sharing common questions of fact and law, this approach is fair and reasonable.  *See Fernau*, 2021 WL 1923285, at *2.  "That the matters were intertwined enough to be brought in a single proceeding, by choice of the Plaintiffs, supports a joint and several fee award."  *Id.*  Additionally, Plaintiffs' claims were advanced by a single attorney, pursuing a common litigation strategy, through joint motions.  *See id.*; *Kipu*, 2021 WL 1895881, at *9; *see also* (ECF Nos. 80, 86, 90, 109, 133, 134, 149, 186, 260, 297, 298) (non-exhaustive list of motions brought jointly by Plaintiffs).  Plaintiffs only now seek to differentiate themselves as they face a potential award of fees and costs.  *See Kipu*, 2021 WL 1895881, at *9; (ECF No. 345 at 1-2).  Moreover, based on Akai's representations about its purported inability to pay the requested attorneys' fees and costs, (ECF No. 345 at 11-12), KKM

runs the risk on non-collection if fees are assessed solely against Akai.  *Kipu*, 2021 WL 1895881, at *9.

## V.     THE LODESTAR METHOD OF DETERMINING REASONABLE FEES

Having determined that KKM is entitled to all reasonable fees and costs incurred in defending this action because all claims against it were inextricably intertwined with Count 1 (misleading advertising under § 817.41) and Count 3 (FDUTPA under § 505.2105), and pursuant to the Proposals for Settlement (§ 768.79), the undersigned next addresses the reasonableness of the requested fees.  In assessing the reasonableness of a request for attorney's fees in the Eleventh Circuit, courts use the "lodestar" method to calculate an objective estimate of the value of an attorney's services.  *Norman*, 836 F.2d at 1299.  Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay.  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F.2d at 1299).  The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  *Barnes*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303).

Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  *Id.* at 428.  When a request for attorney's fees is unreasonably high, courts may "conduct an hour-by-hour analysis" or "reduce the requested hours with an across-the-board cut."  *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing fee request with across-the-board reduction for billing inefficiencies).  Although courts may apply either method, they cannot apply both.  *Bivins*, 548 F.3d at 1351.

Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id*. Additionally, the court may use its own expertise to fashion a pragmatic and reasonable remedy as "a request for attorney's fees should not result in a second major litigation." *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 895 (11th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

### A.    Reasonable Hourly Rates

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)). The relevant market is "the place where the case is filed." *Barnes*, 168 F.3d at 427 (quotation marks and citation omitted). Here, the relevant legal community is South Florida.

In determining reasonable hourly rates in South Florida, the undersigned may consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)[13] (the "*Johnson* factors")).

Here, KKM seeks to recover fees incurred by six individuals from Zimmerman, Kiser & Sutcliffe, P.A. ("ZKS"), who represented KKM throughout the litigation. (ECF No. 337 at 9). In

---

[13] Pursuant to *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981.

support of the Motion, attorney Kevin P. Robinson submits two Declarations detailing the hourly rates of the various timekeepers and their relevant roles.[14]   (ECF No. 337 at 30-33, 191-94). According to the Declarations, attorney Robinson, a member of the Florida bar since 2005, has been a shareholder at ZKS since 2013, and practices commercial and business litigation. (ECF No. 337 at 30, 31-32).  From 2020 through 2024, attorney Robinson billed at hourly rates of $375, $390, $425, $450, and $495, respectively.   (ECF No. 337 at 31-32, 193); *see also* https://www.floridabar.org/directories/find-mbr/profile/?num=14650 (last visited Aug. 28, 2025). The Declarations also provide that attorney Nicholas Mari, a member of the Florida bar since 2016, is a senior associate at ZKS who practices commercial litigation and was the primary associate working on the case.   (ECF No. 337 at 30-31, 35, 191-92); *see also* https://www.floridabar.org/directories/find-mbr/profile/?num=123877 (last visited Aug. 28, 2025).  From 2022 through 2024, Attorney Mari's hourly rates were $275, $325, and $375, respectively. *Id.* at 32, 193.  Although the parties stipulate to the reasonableness of the hourly rates for counsel through 2023, they do not agree to counsel's increased rates for 2024.  (ECF No. 337 at 9, 9 n. 7-9).

The Declarations also explain that associates Ava Sigman (at $275/hr), Richard Harrylal (at $250/hr), and Andrew Hughes (at $225/hr) worked on the case in limited capacities (billing less than 20 hours), primarily preparing for trial and assisting with legal research.  *Id.* at 31-32, 192.  Finally, the Declarations include cursory reference to paralegal Jennifer Concannon, who worked on the case in 2022/2023 in a limited capacity, primarily reviewing documents produced through discovery, and billing at $150 and $175 per hour, respectively.  *Id.*

---

[14] Attorney Robinson's initial Declaration focused on the hours billed and hourly rates between 2020 and 2023.  *See* (ECF No. 337 at 30-33).  Attorney Robinson's supplemental Declaration updates the hours billed and billing rates for 2024.  *Id.* at 191-94.

The Court has considered the relevant *Johnson* factors, the Declarations, and time records, *id*. at 36-153, 197-227, and finds that attorneys Robinson and Mari's rates, including those charged in 2024, are reasonable for the work performed by attorneys in the South Florida legal market.  *See e.g.*, *Family First Life, LLC v. Rutstein*, No. 22-CV-80243, 2023 WL 5939620, at *3 (S.D. Fla. Aug. 23, 2023), *report and recommendation adopted*, 2023 WL 5929434 (S.D. Fla. Sept. 12, 2023) (finding hourly rates between $375-$775 reasonable for attorneys in case involving FDUTPA and defamation claims); *Unisource Discovery, Inc. v. Unisource Discovery, LLC*, No. 20-CV-23276, 2023 WL 4187094, at *2 (S.D. Fla. June 9, 2023), *report and recommendation adopted*, 2023 WL 4188118 (S.D. Fla. June 26, 2023) (finding hourly rates between $230-$500 reasonable for attorneys in case involving FDUTPA claim); *Movie Prop. Rentals LLC v. Kingdom of God Glob. Church*, No. 22-CV-22594, 2024 WL 4215630, at *3-4 (S.D. Fla. Aug. 13, 2024), *report and recommendation adopted*, 2024 WL 4120033 (S.D. Fla. Sept. 9, 2024) (finding $425 a reasonable hourly rate for attorney in case involving FDUTPA claim and noting that the Southern District has found rates up to $850/hr for partners and $700/hr for associate as reasonable); *see also Barberi v. TCB Sport Ent. LLC*, No. 21-CV-60726, 2022 WL 625239, at *3 (S.D. Fla. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 624998 (S.D. Fla. Mar. 3, 2022) (awarding $420/hr to 17-year attorney and $325/hr to 11-year attorney for work in 2021); *CBRE, Inc. v. Capital Com. Real Estate Group, Inc*., No. 19-CV-61235, 2019 WL 7708503, at *2 (S.D. Fla. Oct. 10, 2019), *report and recommendation adopted*, 2019 WL 7708499 (S.D. Fla. Oct. 28, 2019) (awarding $585/hr to 26-year partners and $360/hr to six-year associate for work in 2019).

Nevertheless, the undersigned considers the rates of the other attorneys against Local Rule 7.3(a)(5)(A), which requires that a motion for attorneys' fees and costs provide "the identity, experience, and qualifications for each timekeeper for whom fees are sought."  S.D. Fla. L.R.

7.3(a)(5)(A); *see also Purcella v. Mercantile Adjustment Bureau*, LLC, No. 18-CV-61268, 2019 WL 6462550, at *4, *report and recommendation adopted*, 2019 WL 6608900 (S.D. Fla. Dec. 5, 2019) (reducing counsel's hourly rates for failure to comply with Local Rule). Here, although the Motion includes the professional experience for two of the five attorneys (i.e., Robinson and Mari), the Motion provides little or no information about the three other attorneys (i.e., Sigman, Harrylal, and Hughes) and the paralegal (Concannon) who worked on the case. Upon the Court's independent review, however, and with a lack of opposition from Plaintiffs, the undersigned finds the hourly rates charged by attorneys Sigman (admitted to Florida Bar in 2020 at $275/hr), Harrylal (admitted to Florida Bar in 2022 at $250/hr), and Hughes (admitted to Florida Bar in 2021 at $225/hr) are consistent with the rates charged by attorneys with similar experience in this District. *See e.g.*, *Soc. Athlete v. Young*, No. 22-CV-60556, 2024 WL 624044, at *4 (S.D. Fla. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 621395 (S.D. Fla. Feb. 14, 2024) (awarding $300/hr to four-year associate for work done in 2022); *see also* https://www.floridabar.org/directories (last visited Aug. 28, 2025). Accordingly, the hourly rates for the other attorneys are reasonable.

That said, because KKM did not provide any information regarding the experience/qualifications of paralegal Concannon that would allow the undersigned to determine whether $150/$175 are reasonable hourly rates, the undersigned recommends that the paralegal's hourly rate be reduced to $125. *See, e.g., Purcella*, 2019 WL 6462550, at *4 (reducing paralegal rate from $150 to $125 where the motion provided "little professional background" about the paralegal's identity, experience, and qualifications); *Barberi*, 2022 WL 625239, at *4 (reducing paralegals' hourly rate from $125 to $100 in the absence of any background information regarding their education, skills, and experience); *Garcia v. J & J, Inc.*, No. 19-CV-60728, 2021 WL 633377,

at *6 (S.D. Fla. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 616529 (S.D. Fla. Feb. 17, 2021) (same).  Accordingly, the undersigned recommends that: (i) KKM's attorneys' hourly rates be approved as reasonable, without reduction; and (ii) the paralegal's hourly rate be reduced to $125.

### B.    Reasonable Hours Expended

Having determined counsel's reasonable hourly rates, the undersigned next determines the reasonableness of the hours expended working on the case.  Generally, attorneys must exercise what the Supreme Court has termed "billing judgment."  *Hensley*, 461 U.S. at 434.  That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel."  *Norman*, 836 F.2d at 1301 (quotations and citations omitted).  Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them."  *Barnes*, 168 F.3d at 428.  The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the task.  *Id.* at 427, 432-33.  In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.  Here, the undersigned has reviewed the relevant billing records and finds that the hours expended are reasonable.  (ECF No. 337 at 11, 36-153).  Accordingly, KKM should be awarded fees for the hours expended, without reduction.

For ease of reference, below is a summary of the timekeepers, the hourly rates,[15] and the hours expended, mirroring the chart included in the Motion.  *Id.* at 17.

---

[15] Although KKM is silent on the source of the listed hourly rates, the Court has independently confirmed that the rates are the blended hourly rates for each timekeeper for the years 2020 through 2024.

| TIMEKEEPER | BLENDED/HOURLY RATE | HOURS EXPENDED |
|---|---|---|
| Kevin P. Robinson – Partner | $434.75 | 682.1 |
| Nicholas J. Mari – Senior Assoc. | $310.53 | 424.4 |
| Ava Sigman – Associate | $250 | 12.5 |
| Richard Harrylal – Associate | $250 | 19.1 |
| Andrew Hughes – Associate | $225 | 19.1 |
| Jennifer Concannon – Paralegal | $125 | 8.9 |

In addition to the slight reduction in the paralegal's hourly rate discussed above, the undersigned accepts KKM's reduced fee request of $428,781.46 ($271,051.50 + $157,729.96), as set forth in its Reply.  *See* (ECF No. 346 at 5).  Accordingly, the undersigned recommends that counsel for KKM be awarded $428,781.46 in attorneys' fees.[16]

## VI.   <u>NONTAXABLE COSTS</u>

Pursuant to Florida Statutes §§ 768.79, 817.41, and 501.2105, KKM is entitled to its nontaxable costs reasonable and related to the litigation.  *Sprint Commc'ns, LLC v. Calabrese*, No. 18-CV-60788, 2025 WL 713048, at *11, 12 (S.D. Fla. Feb. 20, 2025), *report and recommendation adopted*, 2025 WL 708130 (S.D. Fla. Mar. 5, 2025) (citations omitted); *see Chow v. Chak Yam Chau*, 640 F. App'x 834, 836 n.4 (11th Cir. 2015) (noting that FDUTPA allows for an award of taxable and nontaxable costs).  KKM seeks to recover $78,068.35 in nontaxable costs. (ECF No. 337 at 18-20).  In the absence of any specific objections from Plaintiffs, the undersigned nonetheless reviews the requested costs to ensure reasonableness and appropriateness.

---

[16] Although the undersigned has reduced the paralegal's hourly rate, the net effect of this reduction to the total amount of fees claimed by KKM is negligible.  Therefore, the undersigned accepts KKM's requested amount of $428,781.46 as the appropriate figure.

### A.  Expert Costs

#### 1.  Trial Expert

Most of KKM's nontaxable costs are related to services rendered by its joint defense metallurgy expert, Dr. Lee Swanger.  *See* (ECF No. 337 at 18, 33, 154-90).  In addition to testifying at trial, Dr. Swanger performed expert testing of the subject barrels and issued a report and supplemental report.  *Id.* at 18.  Exponent (Dr. Swanger's employer) billed a total of $128,814.84 for his services, of which KKM was responsible for 50% ($64,407.42), pursuant to its cost-sharing agreement with co-Defendant SCI.  *Id*.

In the absence of any objection by Plaintiffs, the undersigned finds that the costs incurred by KKM in connection with Dr. Swanger's expert services were reasonably incurred in defense of this litigation and are recoverable.  *See Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, No. 18-CV-20101, 2020 WL 11303392, at *5 (S.D. Fla. July 17, 2020) (awarding expert report preparation fees as nontaxable costs under FDUTPA); *Jacques v. Wal-Mart Stores E., L.P.*, No. 18-CV-60072, 2020 WL 5027358, at *4 (S.D. Fla. Jan. 13, 2020), *report and recommendation adopted*, 2020 WL 5027410 (S.D. Fla. Jan. 31, 2020) (finding defendant entitled to nontaxable expert witness fees); *BVS Acquisitions Co., LLC v. Brown*, No. 12-CV-80247, 2015 WL 12921971, at *8 (S.D. Fla. Aug. 5, 2015) (awarding expert fees as nontaxable costs).

#### 2.  Expert on Fees

KKM also seeks $12,495 in nontaxable costs for the services of attorney Craig S. Barnett, who served as an "expert on fees" in support of the Motion.  *See* (ECF No. 337 at 245-47) (invoice from attorney Barnett).  KKM claims it became necessary to hire attorney Barnett because of Plaintiffs' unwillingness to stipulate to the requested fees and costs.  *Id*. at 19.

The undersigned finds that attorney Barnett's fees are not reasonable and should not be recoverable.  Because the Court is considered an expert on fees, the undersigned did not need to rely on the Affidavit or Supplemental Affidavit of attorney Barnett.  *See Interim Healthcare, Inc. v. Health Care@Home*, LLC, No. 17-CV-61378, 2019 WL 6791465, at *7 (S.D. Fla. Nov. 27, 2019), *report and recommendation adopted*, No. 17-CV-61378, 2019 WL 6769666 (S.D. Fla. Dec. 12, 2019) (citation omitted) (noting failure to have third-party expert review fees is not fatal because the Court is deemed an expert).  Indeed, attorney Barnett's Affidavit included a chart representing that KKM was entitled to $681,283 in attorneys' fees through the final judgment, which is inconsistent with (and greater than) the fees requested by KKM in its Motion.  *Compare* (ECF No. 337 at 234-35), *with* (ECF Nos. 337 at 17, 20, 346 at 5).  Moreover, attorney Barnett's Supplemental Affidavit included an additional $33,385.50 to be awarded to KKM for the post-judgment stage.  *Compare* (ECF No. 337 at 244), *with* (ECF No. 337 at 16-17) (KKM's request for $20,739 in attorneys' fees for the post-judgment period).  Given the inconsistencies between attorney Barnett's Affidavits and KKM's requested fees, the undersigned recommends against an award of fees for attorney Barnett's services.

Accordingly, KKM should be awarded $64,407.42 in nontaxable costs for its expert fees (as to Dr. Swanger only).

### B.  Mediation Costs

KKM also seeks to recover $1,100 in costs associated with mediation.  *Id.* at 20.  The undersigned finds these costs are reasonable and recoverable and should be awarded.  *See Sprint Commc'ns*, 2025 WL 713048, at *12 (awarding $2,815 in nontaxable costs for mediation under FDUTPA); *Gov't Emps. Ins. Co.*, 2020 WL 11303392, at *5 (awarding $2,532 in nontaxable costs for mediation under FDUTPA).

### C.  Miscellaneous Costs

Lastly, KKM requests reimbursement of $65.93 for demonstrative exhibits used at trial. (ECF No. 337 at 19-20).  This amount includes $55.29 for a demonstrative of Exhibit 45 (U.S. M1911/M1911A1 Shop Manual) and $10.64 for an exemplar PVC pipe used during KKM's opening statement.  *Id.*  The undersigned finds these costs are reasonable and related to the litigation, and that KKM should be awarded $65.93 in nontaxable costs for its demonstrative aids. *See Sprint Commc'ns*, 2025 WL 713048, at *12 (awarding nontaxable costs under FDUTPA for certified copies used at trial).

In total, the undersigned recommends that KKM be awarded $65,573.35 in nontaxable costs.

### VII.    RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.      KKM's Motion (ECF No. 337) be **GRANTED IN PART AND DENIED IN PART**.  KKM should be awarded $428,781.46 in attorneys' fees and $65,573.35 in costs.

2.      Plaintiffs be found jointly and severally liable for the award.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Subsequently, within **7 days**, a party may respond to objections, if any, filed to this Report and Recommendation.  Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R.  3-1 (2024); *see Thomas v. Arn*, 474 U.S. 140 (1985).

Lastly, if counsel do not intend to file objections, they shall file a Notice of Non-Objection **within 3 days** of this Report and Recommendation.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida on August 29, 2025.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
    All counsel of record